Argued and submitted April 20, 1999, appeal dismissed March 22, 2000

STATE OF OREGON,
*Plaintiff,*

*v.*

WILLIAM THOMAS BRANSTETTER,
*Defendant.*

PIONEER HUMANE SOCIETY,
*Petitioner-Respondent,*

*and*

STATE OF OREGON,
*Other-Respondent,*

*v.*

WILLIAM THOMAS BRANSTETTER,
*Respondent-Appellant.*

(CR970077; CA A100029)

1 P3d 451

Jay Edwards argued the cause and submitted the brief for appellant.

Katherine H. Waldo, Assistant Attorney General, argued the cause for respondent State of Oregon. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

No appearance for respondent Pioneer Humane Society.

Before Edmonds, Presiding Judge, and Deits, Chief Judge, and Armstrong, Judge.

ARMSTRONG, J.

Edmonds, P. J., dissenting.

## ARMSTRONG, J.

Defendant appeals from a trial court order forfeiting his interest in 11 horses and one donkey because of his failure to post a bond to ensure payment of the expenses of caring for them. We hold that the order is not appealable and therefore dismiss the appeal. We also briefly respond to defendant's and the dissent's argument that the forfeiture was an excessive fine under Article I, section 16, of the Oregon Constitution.

After investigating allegations that defendant was not feeding or caring for the animals, a sheriff's deputy obtained a search warrant authorizing their impoundment. Defendant was then charged with 12 counts of misdemeanor animal neglect. Petitioner Pioneer Humane Society (Pioneer) took possession of the animals and boarded and fed them throughout the criminal proceedings.[1] The first trial ended in a mistrial when the jury was unable to reach a verdict. After the first trial, and before the second trial, Pioneer filed a petition in the criminal proceeding seeking forfeiture of the animals pursuant to ORS 167.347.[2] The state moved to amend

---

[1] On appeal, defendant challenges neither the seizure of the animals nor their placement with Pioneer.

[2] ORS 167.347 provides:

"(1) If any animal is impounded pursuant to ORS 167.345 (2) and is being held by a county animal shelter or other animal care agency pending outcome of criminal action charging a violation of ORS 167.310 to 167.340, prior to final disposition of the criminal charge, the county or other animal care agency may file a petition *in the criminal action* requesting that the court issue an order forfeiting the animal to the county or other animal care agency prior to final disposition of the criminal charge. The petitioner shall serve a true copy of the petition upon the defendant and the district attorney.

"(2) Upon receipt of a petition pursuant to subsection (1) of this section, the court shall set a hearing on the petition. The hearing shall be conducted within 14 days of the filing of the petition, or as soon as practicable.

"(3)(a) At a hearing conducted pursuant to subsection (2) of this section, the petitioner shall have the burden of establishing probable cause to believe that the animal was subjected to abuse, neglect or abandonment in violation of ORS 167.310 to 167.340. If the court finds that probable cause exists, the court shall order immediate forfeiture of the animal to the petitioner, unless the defendant, within 72 hours of the hearing, posts a security deposit or bond with the court clerk in an amount determined by the court to be sufficient to repay all reasonable costs incurred, and anticipated to be incurred, by the petitioner in caring for the animal from the date of initial impoundment to the date of trial.

Pioneer's petition so that the state would become a copetitioner. The court allowed Pioneer's and the state's petitions, rejecting defendant's constitutional and other arguments in opposition. It found that petitioners had made the probable cause showing that ORS 167.347(3)(a) requires and that Pioneer's cost for caring for the animals was $2,700. It then ordered the animals forfeited to Pioneer unless defendant posted a bond for $2,700 within 72 hours of the order. It subsequently denied defendant's motion to reconsider the bond requirement.

On the day of the second trial, the court entered an order forfeiting the animals on the ground that defendant had not posted a bond. Thereafter, the case went to trial. The jury found defendant not guilty of all charges, and the court entered a judgment of acquittal. Defendant appeals from the order forfeiting the animals. The state argues that the order is not appealable. We agree.

■ Defendant asserts that the order of forfeiture is appealable under ORS 138.040, which provides, in part, that "the defendant may appeal to the Court of Appeals from a judgment or order described under ORS 138.053 in a circuit court[.]" ORS 138.053(1) provides that a judgment or order in a criminal case is appealable only if it imposes a sentence *on conviction*, suspends imposition or execution of any part of a sentence, or makes a decision relating to probation. None of those events occurred here or could have occurred here. There can be no sentence, probation or other sanction after

"(b) Notwithstanding paragraph (a) of this subsection, a court may waive for good cause shown the requirement that the defendant post a security deposit or bond.

"(4) If a security deposit or bond has been posted in accordance with subsection (3) of this section, and the trial in the action is continued at a later date, any order of continuance shall require the defendant to post an additional security deposit or bond in an amount determined by the court that shall be sufficient to repay all additional reasonable costs anticipated to be incurred by the petitioner in caring for the animal until the new date of trial.

"(5) If a security deposit or bond has been posted in accordance with subsection (4) of this section, the petitioner may draw from that security deposit or bond the actual reasonable costs incurred by the petitioner in caring for the impounded animal from the date of initial impoundment to the date of final disposition of the animal in the criminal action.

"(6) The provisions of this section are in addition to, and not in lieu of, the provisions of ORS 167.350." (Emphasis added.)

an acquittal. We are not aware of any other provision of ORS 138.010 to ORS 138.310 that would allow an acquitted defendant to appeal.

■■ The dissent argues, however, that this case is a special statutory proceeding that is appealable under ORS 19.205(4), which provides:

> "An appeal may be taken from the circuit court in any special statutory proceeding under the same conditions, in the same manner and with like effect as from a judgment, decree or order entered in an action or suit, unless such appeal is expressly prohibited by the law authorizing such special statutory proceeding."

According to the dissent, the provisions of ORS 167.347 create a special statutory proceeding. The problem with the dissent's argument is that it fails to recognize that the essential nature of a special statutory proceeding is that it is *separate* from every other proceeding. Because ORS 167.347 establishes a process that the statute expressly makes a part of the underlying criminal case, it cannot be a special statutory proceeding.

The Supreme Court's primary discussion of ORS 19.205(4) (which at the time was numbered ORS 19.005(4)) is in *State v. Threet*, 294 Or 1, 653 P2d 960 (1982). The court emphasized that the distinguishing feature of a special statutory proceeding is that it be separate from any other proceeding. As examples it mentioned the writs of review and mandamus, habeas corpus, punishment for contempt, a proceeding under the Corrupt Practices Act to compel the disclosure of expenditures, and appeals of trial court decisions on review of administrative actions. 294 Or at 4-5. On the other hand, an order denying a motion in the nature of *coram nobis* did not qualify, because the motion was part of a criminal proceeding. *Id.* at 6. In *Threet* itself, the court held that an order compelling a witness to testify before a grand jury was not an order in a special statutory proceeding and, thus, was not appealable.

Later cases continue to treat separateness as the defining characteristic of a special statutory proceeding. In *Garganese v. Dept. of Justice*, 318 Or 181, 864 P2d 364 (1993), the Supreme Court held that a proceeding challenging an

administrative investigative demand under the Unlawful Trade Practices Act (UTPA) was a special statutory proceeding, because it was entirely distinct from any action prosecuting an alleged violation of the Act. The dissent relies on *Garganese* to support its argument that we have jurisdiction of this appeal. However, the decision in that case is both consistent with *Threet* and supports our dismissal of this appeal.

■        The authority for the administrative investigative demand at issue in *Garganese* came from ORS 646.618(1), which authorizes the Department of Justice (DOJ) to serve such a demand "upon any person who is believed to have information, documentary material or physical evidence relevant to" an alleged or suspected violation of the UTPA. The question was whether the procedure provided in ORS 646.618(2) for challenging that demand was separate from the procedure provided in ORS 646.632 for prosecuting a violation of the UTPA; if it was, it qualified as a special statutory proceeding for purposes of appellate jurisdiction. The Supreme Court noted that in *Threet* it had traced the history of special statutory proceedings and had concluded that "a *necessary attribute* of a special statutory proceeding under [ORS 19.205(4)] is that it be a 'separate judicial proceeding with clearly defined parties.' " *Garganese*, 318 Or at 185-86 (emphasis added).[3] The court then discussed whether the procedure for challenging the DOJ's investigative demand was "a separate and distinct judicial proceeding, with clearly defined parties, that does not disrupt other judicial proceedings[.]" *Id.* at 186.

In deciding whether the case before it was a separate and distinct judicial proceeding, the court noted that the DOJ could serve an investigative demand on "any person" who it believed had evidence relevant to an alleged or suspected violation. Thus, a proceeding challenging an investigative

---

[3] The court also noted that "[o]ne of the reasons for requiring that the judicial proceedings be separate and wholly distinct is to avoid disruption of other judicial proceedings." *Garganese*, 318 Or at 186. Avoiding disruption, thus, is primarily a reason for requiring that the proceeding be separate, not a test of what constitutes separateness. To the extent that the Supreme Court, in determining appealability, considers whether an appeal would disrupt another proceeding, it is as an additional criterion, not as one of the tests for what makes a proceeding separate and distinct. *See id.*

demand may be entirely separate from an enforcement proceeding under ORS 646.632. DOJ's authority under ORS 646.618(1) is not limited to persons suspected of violating the act, and thus the recipient of an investigative demand will not necessarily be the target of the investigation.[4] "Because the existence of a proceeding under one of those statutes is not dependent on the existence of a proceeding under the other, we conclude that the two proceedings are separate and distinct." 318 Or at 187. It noted that, when the DOJ was unsure whether there is evidence of a violation of the UTPA, a challenge to an investigative demand might delay an enforcement action, but it held that, because no enforcement action under ORS 646.632 had been filed, the challenge would not disrupt another judicial proceeding. Because the trial court's ruling on the investigative demand terminated the proceeding under ORS 646.618(2), its order was appealable under what is now ORS 19.205(4). *Id.* at 187-88. *Garganese*, thus, is simply an application of *Threet* to a statute that expressly contemplated separate proceedings.

The dissent also relies on *State v. K.P.*, 324 Or 1, 921 P2d 380 (1996), in which the defendant appealed from an order under ORS 137.225 that sealed the records of her arrest and conviction for theft except for police investigation reports. After rejecting two other possible statutory authorizations for appeal, the Supreme Court held that the order was appealable under what is now ORS 19.205(4). Its reasons for rejecting the two other possible sources of appellate jurisdiction are essential to understanding the relevance of *K.P.* to this case. The court first noted that a motion to set aside a criminal conviction or arrest was not in the nature of an action to punish a criminal violation but, instead, had a rehabilitative purpose. The motion was not, therefore, a criminal proceeding, and ORS chapter 138 did not govern an appeal. The court then rejected the defendant's suggestion that the case was appealable, under what is now ORS

---

[1] In a case that the Supreme Court decided the same day as *Garganese*, it noted that "DOJ need not make a threshold showing at the investigative demand stage that the recipient of the investigative demand, or that the entity under investigation, falls within the definition contained in ORS 646.605(7) [describing part of the coverage of the UTPA]. One legitimate aim of the investigation may be to discover whether [the recipient's] practices are covered by the Act." *Vendall Marketing Corp. v. Dept. of Justice*, 318 Or 189, 195, 863 P2d 1263 (1993).

19.205(2)(c), as an order affecting a substantial right, made in a proceeding after judgment. Instead, it held that the order was appealable under ORS 19.205(4) as coming from a special statutory proceeding. *K.P.*, 324 Or at 4-6.

The foundation for the court's analysis in *K.P.*, thus, was that a motion under ORS 137.225 to set aside a conviction starts a new proceeding from the original prosecution; if it did not, one of the other statutes would have controlled the appealability of the decision. The court determined that the proceeding in question was not part of the criminal proceeding and was appealable for that reason. That is different from this case, in which the statute expressly provides that the forfeiture proceeding is part of the criminal case.

The final cases that the dissent discusses, *State v. Cunningham*, 161 Or App 345, 985 P2d 827 (1999), and *State v. Curran*, 291 Or 119, 628 P2d 1198 (1981), both involve current ORS 19.205(2)(c). That statute does not apply in this case, because the court entered the order of forfeiture before the judgment of conviction. In any event, ORS 19.205(2)(c) is conceptually inconsistent with a special statutory proceeding under ORS 19.205(4). In *Cunningham*, we held that an order in a criminal case that denied the defendant's motion to seal certain records relating to defense expenses was appealable as a post-judgment order that affected a substantial right. We concluded that, although the motion was made in a criminal case, it was essentially civil in character and thus the civil appeals statute controlled. We did not discuss the possible applicability of ORS 19.205(4). Indeed, if the court's order was a post-judgment order in the criminal case, it could not have been a judgment in a special statutory proceeding.

In *Cunningham* we relied in part on *Curran*, in which the defendant did not appeal from his conviction but instead appealed from a post-conviction punitive forfeiture that was imposed under *former* ORS 471.665 (1979). Under that statute, a court could order the sale of property used to transport contraband, pursuant to an order that it entered after the conviction of the person. *Former* ORS 471.665(1) (1979). The forfeiture apparently occurred on the entry of the order. In *Curran*, the court entered the order of sale over a month after it entered the judgment of conviction. As a

result, the court noted, the appeal of the forfeiture was not an appeal from a judgment on conviction. Rather, the forfeiture was in the nature of a civil penalty, and the civil appeal statutes therefore applied. The court then concluded that the applicable statute was current ORS 19.205(2)(c), because the order was both final as to the forfeiture and came after judgment. Although it also noted that current ORS 19.205(4) was "arguably applicable," it had no reason to decide the issue. *Curran*, 291 Or at 124-27.

■ Contrary to the dissent's suggestion, *Curran* supports our conclusion that we do not have jurisdiction over this case. The forfeiture in that case was not a separate proceeding. Rather, as the Supreme Court recognized, "the trial court was authorized to proceed with the matter of forfeiture without the necessity of resort by the district attorney to a new and separate cause[.]" 291 Or at 126. That conclusion is also inherent in the court's reliance on current ORS 19.205(2)(c) for its jurisdiction, because that statute requires that the order be made after judgment in the same case. The court decided *Curran* a year before it decided *Threet*, so when it suggested that current ORS 19.205(4) might also apply it did not have the benefit of the more careful consideration that it gave that statute in the later case. The emphasis in *Threet* and later cases on separateness as an essential element of a special statutory proceeding means that it is impossible to find jurisdiction of the same order or judgment under *both* subsections. If the order is appealable because it comes after judgment in the same case, it cannot be an order in a special (and thus separate) statutory proceeding. Thus, holding that one of these subsections applies necessarily means that the other does not.

We have followed *Threet* in more recent cases. Thus, in *Strother and Strother*, 130 Or App 624, 628, 883 P2d 249 (1994), *rev den* 320 Or 508 (1995), we followed *Threet* and held that a proceeding under the Abuse Prevention Act was a special statutory proceeding. In doing so, we emphasized that the proceeding involved clearly defined parties and was not part of any other judicial proceeding. In *State v. Gangi*, 66 Or App 582, 675 P2d 181 (1984), we held that we had no jurisdiction over an appeal from an order continuing a case for five

years rather than placing the defendant under the jurisdiction of the Psychiatric Security Review Board or discharging him. We agreed with the state's reliance on an earlier case, which we held was consistent with *Threet*, to show that there was no special statutory proceeding.

The application of *Threet* and *Garganese* to this case is clear. The essential issue is whether the order of forfeiture occurred in a proceeding that was separate and distinct from the criminal case. The statute that authorizes the forfeiture also answers that question. ORS 167.347(1) provides that a county animal shelter or other animal care agency that is caring for an animal pending the outcome of a criminal animal neglect case "may file a petition *in the criminal action*" seeking to forfeit the animal to the agency. The court will then hold a hearing on the petition. If it finds that there is probable cause to believe that the animal was subject to abuse, neglect, or abandonment in violation of the criminal statutes, it shall order immediate forfeiture unless the defendant posts a bond within 72 hours in an amount sufficient to repay the costs of caring for the animal from the date of impoundment to the date of trial. ORS 167.347(3)(a). Although the purpose of the bond and forfeiture requirement is not punitive, the statute expressly provides that the entire procedure occurs *within* the criminal case. Because it is not separate from that case, it cannot be a special statutory proceeding under ORS 19.205(4). Because it is not a special statutory proceeding, and because there is no other possible basis for appellate jurisdiction, we do not have jurisdiction over this appeal.[5]

---

[5] This case illustrates the importance of the requirement that special statutory proceedings be separate from other judicial proceedings. If defendant were entitled under ORS 19.205(4) to appeal from the order that forfeited his interest in the animals, he would file his notice of appeal in his criminal case, as he did here, because that is the only case in which it could be filed. If he had done that before his second trial on the animal neglect charges, the filing of the notice would have deprived the trial court of jurisdiction to conduct that trial. *See, e.g.*, ORS 19.270(1); ORS 138.083; *Macy v. Blatchford*, 154 Or App 313, 324, 961 P2d 873, *rev allowed* 328 Or 194 (1998). We would then have had to decide defendant's appeal from the forfeiture order before the case could have been returned to the trial court for trial of the criminal charges. The requirement that special statutory proceedings be separate to be appealable under ORS 19.205(4) avoids creating situations, such as the one described here, in which people could obtain appellate review of interlocutory orders. Tellingly, none of the cases on which the dissent relies involved a situation in which appellate review under ORS 19.205(4) would deprive a trial court or

■ Our decision that we have no jurisdiction over the appeal decides this case. However, we will respond briefly to the dissent's argument that the forfeiture was an excessive fine because of the disproportion between the cost of caring for the animals and their value.[6] The underlying problem with the dissent's conclusion is that the forfeiture was not a fine or any other form of punishment for defendant's alleged abuse of the animals. Because of defendant's acquittal, *any* fine for that offense would be excessive and beyond the trial court's authority. If defendant had been convicted of animal abuse, ORS 167.350 would have provided authority for the court to forfeit his rights in a mistreated animal. Such a punitive forfeiture, however, is not the purpose of ORS 167.347. Rather, the purpose of that statute is to ensure that the agency that takes care of allegedly abused or neglected animals pending the trial will be able to recover the expense of that care. That purpose is obvious from the structure of the statute.

ORS 167.345 provides the background to ORS 167.347. Under that statute, if there is probable cause to believe that an animal is being abused, a peace officer, after obtaining a search warrant, may impound the animal. ORS 167.345(2). The court may then order the impounded animal held at an animal care facility. The statute requires the facility to provide adequate food and water and permits it to provide veterinary care. ORS 167.345(3). The purpose of ORS 167.347 is to establish the method of paying for the costs that the facility incurs in carrying out those responsibilities. Subsection (1) permits the agency, before final disposition of the criminal charge, to petition for a court order forfeiting the animal. Subsection (2) provides for a hearing on the petition. Under subsection (3), the agency has the burden of establishing probable cause that the animal was abused; if the agency meets that burden, the court *shall* order forfeiture unless the defendant posts a bond or security deposit within 72 hours.

---

agency of jurisdiction to proceed with a pending matter. That is because none of them violated the separateness requirement, as a decision in favor of defendant on the jurisdictional issue in this case would.

[6] As part of arguing that the forfeiture was an excessive fine, the dissent emphasizes that the forfeiture is part of the criminal action, not separate from it. In doing so, it shows that the forfeiture is not a special statutory proceeding and, thus, that we do not have jurisdiction over this appeal.

Subsection (5) allows the agency to draw on the bond or security deposit to cover its actual reasonable costs. Finally, subsection (6) expressly provides that the statute is in addition to, not in lieu of, ORS 167.350, which provides for forfeiture as a penalty on conviction.

The essential point about ORS 167.347 is that the purpose for the forfeiture is to ensure payment to the agency, not to punish the defendant. Permitting the defendant to avoid the forfeiture by providing security for the agency's expenses—that is, to fulfill the defendant's obligation as owner of the animals to give them adequate care—is in itself inconsistent with the idea that the forfeiture is punitive. Under ORS 87.159, the agency has a lien on the animals in its care. It appears that ORS 167.347 provides an alternative, more efficient, method for protecting the agency. Because that method is not punishment for a crime, it is not unconstitutional on any ground that defendant raises.[7]

Appeal dismissed.

**EDMONDS, P. J.,** dissenting.

After defendant was acquitted of violating ORS 167.315, he appealed the forfeiture of his ownership interest in 11 horses and one donkey under ORS 167.347. His appeal presents two issues: (1) Is the trial court's order requiring defendant to forfeit his ownership interests in his animals appealable under ORS 19.205(4)? (2) Does the forfeiture constitute an "excessive fine" under Article I, section 16, of the Oregon Constitution? The majority's answers to those questions are incorrect for the reasons that follow.

ORS 19.205(4) provides:

"An appeal may be taken from the circuit court in any special statutory proceeding under the same conditions, in the same manner and with like effect as from a judgment, decree or order entered in an action or suit, unless such

---

[7] Defendant does not assert that there is any constitutional infirmity in the failure to provide in ORS 167.347 for sale rather than forfeiture of the animals, with the owner receiving the proceeds that exceed the costs of sale and the agency's expenses. Foreclosing a lien would normally require such a sale and disposition of the proceeds. *See* ORS 87.206.

appeal is expressly prohibited by the law authorizing such special statutory proceeding."

The majority concludes that ORS 19.205(4) is inapplicable to defendant's appeal because ORS 167.347 provides that "the county or other animal care agency may file a petition in the criminal action requesting that the court issue an order forfeiting the animal to the county or other animal care agency prior to final disposition of the criminal charge." The majority asserts, "Because ORS 167.347 establishes a process that the statute expressly makes a part of the underlying criminal case, it cannot be a special statutory proceeding." 166 Or App at 290. The majority's analysis proves too much. In other words, the majority reasons that because the petition for forfeiture is filed within the criminal proceeding, it necessarily follows that the judgment rendered on the petition is part of the criminal proceeding for purposes of ORS 19.205(4). However, the issue is more complicated than that because forfeiture proceedings are essentially civil in nature. The legislature could have intended that a proceeding under ORS 167.347 be separate from the criminal proceeding; two proceedings, one civil and one criminal, proceeding at the same time under the cloak of the criminal proceeding but each independent of the other in their nature and outcome.

The answer to the issue is found in the text and context of the applicable statutes. ORS 167.350(1) provides for the forfeiture of ownership interests in mistreated animals "[i]n addition to and not in lieu of any other sentence it may impose * * *." If defendant had been convicted and his interests in the subject animals forfeited in addition to his sentence, defendant's right to appeal would have been under ORS 138.040. In the absence of a criminal conviction, the appealability of a judgment of forfeiture under ORS 167.347 presents two possibilities: (1) The legislature did not intend such a judgment to be appealable even though it did intend for such a judgment to be appealable when the defendant was convicted of criminal mistreatment of animals, or (2) the legislature intended a judgment pursuant to ORS 167.347 to fall within the purview of ORS 19.205(4). ORS 19.205 provides what judgments are appealable in civil cases. ORS 138.040 provides for appeals from criminal convictions including convictions under ORS 167.310 through ORS 167.340. It is

incongruous to believe that the legislature would have intended only convicted persons to have the right to appeal from the effect of civil forfeitures under ORS 138.040 when ORS 167.347 contemplates that a forfeiture is authorized even though no conviction occurs in the criminal case.[1] Surely, the context of the statutory scheme as a whole indicates an intention that those acquitted of the criminal charges under ORS 167.310 through ORS 167.340, but subject to a civil judgment of forfeiture, would have appellate rights commensurate with those convicted under the criminal statutes. Consequently, *"any* special statutory proceeding" within the meaning of the text and context of ORS 19.205(4) must be understood to include proceedings pursuant to ORS 167.347 to provide parallel avenues of appeal. (Emphasis added.)

The majority relies primarily on language from *State v. Threet*, 294 Or 1, 653 P2d 960 (1982), in support of its view that the legislature did not intend to afford the right to appeal a judgment of forfeiture under ORS 167.347 to an unconvicted defendant. The first observation to be made about all of the case law interpreting ORS 19.205(4) is that there is no Supreme Court or Court of Appeals case of which I am aware that is on point directly regarding whether ORS 167.347 should be considered a special statutory proceeding under ORS 19.205(4). In other words, this case does not present the situation where the Supreme Court's case law had become part of the statute as if it had been written into the statute at the time of its adoption. The holding in *Threet* is no exception to that observation. The issue in that case was whether orders of the circuit court requiring witnesses to appear and testify before a grand jury were appealable under ORS 19.205(4). In deciding that question, the court focused on the effect of permitting an appeal that would disrupt the substance of the grand jury process, a step in a criminal proceeding that had been already commenced. *Threet*, 294 Or at 7. In contrast, this case involves a forfeiture proceeding that

---

[1] ORS 167.347(3)(a) provides that the petitioner in the forfeiture proceeding "shall have the burden of establishing probable cause to believe that the animal was subjected to abuse, neglect or abandonment in violation of ORS 167.310 to 167.340." A conviction under ORS 167.310 to ORS 167.340 requires proof beyond a reasonable doubt, not probable cause.

is entirely discrete from the criminal trial process. Thus, *Threet* does little to inform the inquiry of the legislature's intent regarding ORS 19.205(4) as it applies to the facts of this case.

Nonetheless, one of the most recent Supreme Court decisions interpreting ORS 19.205(4), *Garganese v. Dept. of Justice*, 318 Or 181, 864 P2d 364 (1993), provides some insight into deciding the issue, even though it concerned different facts. In that case, decided after *Threet*, the question was whether the Department of Justice's demand for information from a telemarketing company pursuant to ORS 646.618(1) was a separate and distinct judicial proceeding from an action under ORS 646.632. The latter statute authorizes the department to prosecute for unlawful trade practices. Under ORS 646.618(1), a prosecutor may serve an investigative demand "upon any person who is believed to have information * * * relevant to the alleged or suspected violation." Under ORS 646.632, a prosecutor who has probable cause to believe that an unlawful trade practice will occur or is occurring may bring an action to enjoin violations of the act. Because the enforcement proceeding could be brought at any time under the statutory scheme, an appeal from the investigative demand process does not operate to disrupt the enforcement proceeding, as could have occurred in the criminal process in *Threet*.[2] *Garganese*, 318 Or at 187-88.

Nonetheless, the Department of Justice in *Garganese* argued that the investigative demand under ORS 646.618(1) was merely a constituent part of its enforcement powers under ORS 646.632, rather than a separate proceeding. Therefore, it followed that an appeal from a circuit court order requiring the plaintiffs to comply with the department's investigative demand on them was impermissible under the predecessor statute to ORS 19.205(4). That argument is similar in concept to the argument made here by the majority. The court rejected the department's argument, holding that the procedure for challenging a demand under ORS 646.618(1) was a separate and distinct judicial proceeding from the department's enforcement powers under the

---

[2] At the time of the appeal, there was no enforcement proceeding pending in *Garganese*.

Unlawful Trade Practices Act because the investigative proceeding had clearly defined parties and because it did not disrupt any other judicial proceeding.

When the forfeiture proceeding under ORS 167.347 in this case is considered in light of the court's interpretation of ORS 19.205(4) in *Garganese*, the analogy is apparent. ORS 167.345 through ORS 167.350 are statutes that are part of the Oregon Criminal Code regarding offenses against animals. ORS 167.315 provides that a person commits the crime of animal abuse in the second degree if the person intentionally, knowingly, or recklessly causes physical injury to an animal. The person need not be the owner of the animal to be culpable under the statute. In contrast, ORS 167.345 and ORS 167.347 authorize civil *in rem* proceedings regarding the animals themselves, not unlike other forfeiture proceedings that are directed against title or ownership interests in things. ORS 167.345 authorizes the seizure and impoundment of endangered animals. ORS 167.347 provides that the county or other animal care agency "may file a petition in the criminal action requesting that the court issue an order forfeiting the animal * * * *prior to final disposition of the criminal charge.*" (Emphasis added.) In the event that a defendant is convicted under ORS 167.315, ORS 167.350 authorizes the sentencing court to require the defendant to forfeit "any rights * * * in the animal," but forfeiture is also authorized under ORS 167.347 apart from any sentence.

Not unlike the relationship between ORS 646.618(1) and ORS 646.632 in *Garganese*, the provisions of ORS 167.345 and ORS 167.347 demonstrate that they authorize separate proceedings within the meaning of ORS 19.205(4) from a criminal action under ORS 167.315 and ORS 167.350. The parties in the civil forfeiture proceeding are different from the parties in the criminal action and are clearly defined. In the criminal proceeding, the parties were the State of Oregon and defendant. In the forfeiture proceeding, the parties are Umatilla County, the Pioneer Humane Society, and defendant.

Also, a proceeding under ORS 167.347 may be filed as part of the criminal proceeding, just as an investigative

demand under ORS 646.618(1) could occur as part of a prosecution under ORS 646.632. Under ORS 646.618(1), an investigative demand is not limited to serving a demand on a person suspected of violating the Unlawful Trade Practices Act. Such a demand can be made on a person who is not a party in the enforcement action. Similarly, a forfeiture proceeding under ORS 167.347 is not limited to the person charged with a violation of ORS 167.315. Rather, it applies to anyone whose animal is endangered, whether the owner or someone else perpetrated the abuse or neglect. Most importantly, the existence of the forfeiture proceeding is not dependent on the outcome of the criminal proceeding, nor does the forfeiture proceeding disrupt the criminal proceeding. The facts in this case illustrate the point. The forfeiture order against defendant was entered before he was acquitted of the charges under ORS 167.315.

The majority draws a fine line in its effort to distinguish *Garganese* and to defeat the above analogy. It says that the element of the avoidance of disruption in another proceeding "is primarily a reason for requiring that the proceeding be separate, not a test of what constitutes 'separateness.'" 166 Or App at 291 n 3. It concludes, *"Garganese*, thus, is simply an application of *Threet* to a statute that expressly contemplated separate proceedings." 166 Or App at 292. The majority's analysis assumes the ultimate conclusion that it makes without considering that the civil nature of ORS 167.347 makes it conceptually separate from the merits of the criminal proceeding within which it is initiated and that the statutory procedure can be resolved without disruption to the criminal process. If anything, the nexus between ORS 646.618 and ORS 646.632 is closer than the nexus between ORS 167.347 and a prosecution under ORS 167.315. An investigation under ORS 646.618 could lead to a prosecution under ORS 646.632. However, a petition filed under ORS 167.347 plays no role in an adjudication under ORS 167.315.

Also, the majority's reasoning is inconsistent with the Supreme Court's holding in *State v. K.P.*, 324 Or 1, 921 P2d 380 (1996), where a post-judgment order pertaining to a

criminal proceeding was held appealable under the predecessor statute to ORS 19.205(4). The defendant in *K.P.* had been convicted of theft in the second degree. Subsequently, she brought a motion to seal the records of that misdemeanor conviction pursuant to ORS 137.225. The trial court's order sealed some records but excluded others from being sealed. The defendant appealed from that order. On appeal, the court first concluded that the appeal provisions of ORS chapter 138 did not apply because the statutory proceeding was intended to serve a rehabilitative function—the "antithesis of the original criminal conviction." *K.P.*, 324 Or at 6-7. Thus, the defendant in *K.P.* had no ability to appeal the order under chapter 138, even though she had been convicted. Moreover, her motion to seal the records did not affect the merits of the criminal proceeding, nor did it disrupt or revive the criminal proceedings. *Cf. State v. Endsley,* 214 Or 537, 331 P2d 338 (1958) (holding that an appeal denying a petition for what was essentially a petition for a new trial to reopen the criminal process was not separately appealable.) This case is more like *K.P.* than it is like *Endsley* on which *Threet* relied.

The majority's reasoning begins with the unwarranted assumption that the forfeiture order pertains to the merits of the criminal process. However, it does not necessarily follow from the fact that the petition for forfeiture may be filed "in the criminal action" that the judgment rendered on the petition is a part of the merits of the criminal process. The motion to seal the records in *K.P.*, although related to the criminal proceeding, did not affect the process that led to the criminal judgment of conviction. Similarly, the judgment of forfeiture in this case is not part of the underlying criminal process and has no effect on defendant's acquittal.

Even though the forfeiture judgment is not part of the criminal process, the fact remains that it could have been part of the sentence, had defendant been convicted. Does that possibility, together with the fact that the forfeiture proceeding is filed within the criminal proceeding, materially comment on the legislature's intent regarding appealability of the forfeiture order? Although also not directly on point, one of our recent cases, *State v. Cunningham,* 161 Or App 345, 985 P2d 827 (1999), is instructive on that issue, primarily

because it relies on a Supreme Court case, *State v. Curran*, 291 Or 119, 628 P2d 1198 (1981), in its analysis.[3] In *Cunningham*, the defendant argued that an order seeking court records pertaining to his indigent defense expenses from his criminal trial was essentially civil in nature, *although it was filed in the criminal case*. 161 Or App at 348. We reviewed several cases, each of which found appellate jurisdiction either in ORS 19.205(2)(c)[4] or ORS 19.205(4). *Id.* at 348-50. We concluded that:

> "In each of those cases, a post-trial order that did not pertain to the merits of the criminal trial was appealed, and, in each instance, the appellate courts concluded that ORS chapter 138 did not bar the appeal and that [ORS chapter 19] permitted the appeal." *Id.* at 350.

In *Curran*, the owner of a vehicle appealed an order forfeiting his motor vehicle. Apparently, the vehicle had been seized when the owner had been arrested for unlawful possession and transportation of cocaine. Similar to the forfeiture of the animals in this case, the forfeiture in *Curran* was not part of the defendant's criminal sentence. On appeal, the court asked the parties to identify the source of appellate jurisdiction. *Curran*, 291 Or at 122. The court reviewed the sources that the parties identified, including the provisions of ORS chapter 19 and ORS chapter 138, and held:

> "We have reached the conclusion that ORS 19.010(2)(c) [*renumbered as* ORS 19.205(2)(c)] is applicable. The order * * * was final in disposing of the motion for an order of forfeiture. It affected a substantial right and was made in a proceeding after the judgment of conviction." *Id.* at 127.

The *Curran* court reached its conclusion even though it acknowledged that "it could be argued that the proceeding occurred in court in connection with a completed criminal action." *Id.* at 125 n7. In both *Curran* and *Cunningham*, the critical fact was that the orders on appeal, although

---

[3] *See also State v. Arms*, 60 Or App 400, 653 P2d 1004 (1982), *rev den* 294 Or 461 (1983). In *Arms*, the defendant, who was acquitted on a criminal charge, appealed an order to pay costs incurred by the county for her court-appointed counsel. We held that the judgment making her liable for the costs was appealable under *former* ORS 19.010(2)(c), *renumbered* as ORS 19.205(2).

[4] ORS 19.205(2)(c) provides review on appeal of "[a] final order affecting a substantial right, and made in a proceeding after judgment or decree."

the result of motions filed in the criminal cases, "did not pertain to the merits of the criminal trial." *Cunningham*, 161 Or App at 350. The majority points out that *Cunningham* and *Curran* were decided under ORS 19.205(2)(c), and it asserts that "ORS 19.205(2)(c) is conceptually inconsistent with a special statutory proceeding under ORS 19.205(4)." 166 Or App at 293. It correctly argues that, although the motions in those cases were made or could have been made in the underlying criminal cases, the motions were essentially civil in nature. ORS 19.205(2)(c) provides for appeal of "[a] final order affecting a substantial right, and made in a proceeding after judgment or decree." The claim of conceptual inconsistency is unpersuasive. ORS 19.205(2)(c) pertains to "final" civil orders. The forfeiture judgment as to defendant's ownership of the animals in this case is as "final" as it can be and is in the nature of a civil judgment. It imposes no criminal sanctions, only the loss of defendant's property. In that respect, it is like the order sealing court records in *Cunningham* and the order forfeiting the defendant's motor vehicle in *Curran*.

The majority's further reliance on *Strother and Strother*, 130 Or App 624, 883 P2d 249 (1994), *rev den* 320 Or 508 (1995), in which we held that a proceeding under the Abuse Prevention Act, ORS 107.710, was a separate proceeding under the predecessor of ORS 19.205(4), is somewhat curious. We said in that opinion that "[i]t is instructive to consider what the court has held not to be a 'special statutory proceeding.'" 130 Or App at 628. We then focused on the holdings in *Threet* and *Endsley*, noting that those cases involved proceedings where an appeal could disrupt or abort a criminal proceeding. In contrast, a proceeding under the Abuse Prevention Act lacks such indicia, as does a forfeiture under ORS 167.347.

In summary, the cases relied on by the majority do not, as the majority suggests, require us to interpret ORS 19.205(4) to deny defendant his day in this court. The proceedings in *Threet* and the examples that it mentions all involve proceedings that pertained to the merits of the criminal process and involved a close nexus to the liberty interests involved. Each had the possibility of disrupting other judicial proceedings, and a decision on appeal could have given rise to

inconsistent relief.[5] The potential for inconsistent relief does not exist here. The forfeiture of defendant's animals as payment for the care provided by the humane society involves the loss of his ownership interests, not his liberty interest.

Here, as in *Garganese*, there was no danger of disrupting another proceeding because the forfeiture of defendant's property interests were unrelated to the merits of the criminal proceedings against him. The outcome of whether there was "probable cause to believe that the animal[s] [were] subjected to abuse, neglect or abandonment" had no bearing on whether defendant was guilty of violating ORS 167.315. Although the majority asserts that the filing of a notice of appeal of the forfeiture judgment by defendant "would have deprived the trial court of jurisdiction to conduct that trial[,]" 166 Or App at 295 n 5, there is no support for that proposition unless the majority's underlying premise that the forfeiture was an integral part of the criminal proceeding and that the criminal proceeding could not have gone forward without a determination under ORS 167.347 is accepted. Certainly, there is no factual reason why the criminal proceeding had to await the outcome of an appeal of the forfeiture proceeding. In sum, the majority's ruling is unsupported by precedent and flies in the face of the common-sense notion that a forfeiture proceeding under ORS 167.347 is directed at different legal interests than the liberty interests involved in a prosecution under ORS 167.315. Accordingly, I disagree with the majority's dismissal of defendant's appeal.

The second issue is whether the trial court's order constitutes an "excessive fine" under Article I, section 16. The majority dismisses defendant's argument with the assertion that he has not been punished for the conviction of any crime and, therefore, he has not been fined. It says that the purpose of ORS 167.347 is to ensure that the care provider is compensated for the expense of care pending trial and that purpose was fulfilled here. If this case were only about compensating the humane society for its expenditures in caring for defendant's animals, I would agree with the majority. However, the uncontradicted evidence is that the trial court ordered

---

[5] The same rationale applies to our holding in *State v. Gangi*, 66 Or App 582, 675 P2d 181 (1984).

the forfeiture of defendant's animals, valued at between $9,600 and $15,000, for expenses incurred in the amount of $2,700. If defendant had been convicted and a forfeiture ordered under ORS 167.350, under those circumstances, there is no question that the forfeiture would be considered an "excessive" fine. Although defendant was not convicted, he has been deprived of the value of his property in excess of the value of the care because of the effort of the government to convict him of criminal offenses. Thus, the question becomes whether the forfeiture in excess of $2,700 constitutes "punishment" under section 16 in light of the fact that defendant was ultimately acquitted of the criminal charges.[6]

The relevant portion of section 16 provides that "[e]xcessive bail shall not be required, nor excessive fines imposed." Its purpose is self evident. A criminal defendant should not be punished beyond what is just. *See, e.g., State v. Ross*, 55 Or 450, 474, 480, 104 P 596, 106 P 1022 (1910), *appeal dismissed* 227 US 150, 33 S Ct 220, 57 L Ed 458 (1913) (holding a fine excessive because it was greater than defendant could pay in a lifetime). My review of Oregon appellate case law reveals no case under section 16 that has facts similar to this case or that would aid us in analyzing defendant's argument. However, the "excessive fines" language in section 16 is identical to the language in the Eighth Amendment to the United States Constitution and, therefore, cases construing its meaning in the context of civil forfeitures are instructive.

Defendant's property interests in his animals became subject to seizure and impoundment under ORS 167.345 and forfeiture under ORS 167.347 only because there was probable cause to believe that ORS 167.315, a criminal statute, had been violated. In addition to the seizure of his property, defendant himself became a party charged with a crime and subject to the criminal law processes. Later,

---

[6] The majority argues that it is internally inconsistent to assert that the forfeiture proceeding is a separate statutory proceeding under ORS 19.205(4) from the criminal proceeding against defendant, and then assert that the forfeiture proceeding is part of the criminal punishment of defendant. However, "appealability" under Oregon statutes is unrelated to whether government action constitutes "punishment" under section 16. The former depends on the intent of the legislature, while the latter depends on the intent of the framers of the constitution.

the forfeiture petition was filed during the criminal proceeding. At the forfeiture hearing, the petitioners had the burden of showing that defendant's animals were subjected to abuse or neglect in violation of ORS 167.315. In these kinds of cases, the federal courts have looked beyond whether the nature of the action is "civil" or "criminal" to determine if the government sanction constitutes "punishment" within the meaning of the Eighth Amendment.

For instance, in *Austin v. United States*, 509 US 602, 609, 113 S Ct 2801, 125 L Ed 2d 488 (1993), the Supreme Court addressed the applicability of the Excessive Fines clause to *in rem* civil forfeitures under 21 USC § 881. Previously, Austin had been convicted of violating federal drug laws. Subsequent to his conviction and in a separate proceeding, the government sought forfeiture of his mobile home and auto body shop, alleging that they had been used in the drug offenses for which Austin had been convicted. The Eighth Circuit viewed the issue in a manner not unlike that held by the majority. It ruled that the Eighth Amendment did not apply to civil actions for the forfeiture of property to the government. The Supreme Court reversed.

The government argued to the Supreme Court in *Austin* that the Eighth Amendment did not apply "unless the challenged government action, despite its label, would have been recognized as a criminal punishment" at the time of the adoption of the Eighth Amendment or unless the civil proceeding was so punitive that it must be deemed criminal in nature. 509 US at 607. The court rejected the government's argument:

> " 'The notion of punishment, as we commonly understand it, cuts across the division between the civil and the criminal law.' *United States v. Halper*, 490 US 435, 447-448, 104 L Ed 2d 487, 109 S Ct 1892 (1989). 'It is commonly understood that civil proceedings may advance punitive as well as remedial goals, and, conversely, that both punitive and remedial goals may be served by criminal penalties.' *Id.* at 447, 104 L Ed 2d 487, 109 S Ct 1892. * * * Thus, *the question is not,* as the United States would have it, *whether forfeiture* under §§ 881(a)(4) and (a)(7) *is civil or criminal, but rather whether it is punishment.*" *Austin*, 509 US at 610 (emphasis added).

In deciding whether the forfeiture of Austin's property was "punishment" or "remedial," the court said,

"We previously have upheld the forfeiture of goods involved in customs violations as a 'reasonable form of liquidated damages.' But the dramatic variations in the value of conveyances and real property forfeitable under §§ 881(a)(4) and (a)(7) undercut any similar argument with respect to those provisions. The Court made this very point in [*United States v. Ward*, 448 US 242, 65 L Ed 2d 742, 100 S Ct 2636 (1980)]: the 'forfeiture of property * * * [is] a penalty that ha[s] absolutely no correlation to any damages sustained by society or to the cost of enforcing the law.'" 509 US at 621 (citations omitted).

Thus, the court concluded that both fixed-amount penalties and the forfeitures of property constitute punishment if they are not solely remedial and occur as the result of prior criminal proceedings. *Id.* at 618 n 12, 622 n 14.

Had defendant been convicted, it is clear that under the holdings in *Austin* and *Ward* any forfeiture in excess of the damages sustained by the county and the humane society would have constituted "punishment."[7] In both this case and

---

[7] In *Austin*, 21 USC §§ 881(a)(4) and (a)(7) (1993) provided authorization for the government to seek forfeiture of the defendant's property. Those statutes provide for the forfeiture of:

"(4) All conveyances, including air craft, vehicles, or vessels, which are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of [controlled substances, their raw materials, and equipment used in their manufacture and distribution.]

"* * * * *

"(7) All real property, including any right, title, and interest (including leasehold interest) in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this subchapter punishable by more than one year's imprisonment * * *."

Each of those provisions has an "innocent owner" exception, *see* 21 USC §§ 881(a)(4)(C) and (a)(7), but has no provision requiring, or allowing, the trial court to consider whether forfeiture would be excessive.

In response to *Austin*, the Oregon Legislature enacted ORS 475A.100 in 1993 to supplement Oregon's drug-related *in rem* forfeiture statutory scheme to avoid excessive punishment claims under the Eighth Amendment. *See* Tape recordings, Senate Judiciary Committee, HB 2381, June 28, 1993, Tape 203, Sides A and B, and Tape 204, Side A; July 16, 1993, Tape 221, Side B, and Tape 222, Side B; July 30, 1993, Tape 235, Side A, and Tape 236, Side A. ORS 475A.100 specifically

*Austin*, the forfeitures were not part of a sentence imposed by the sentencing court after a criminal trial, but were imposed as the result of a separate civil proceeding. Also, in *U. S. v. 3814 NW Thurman Street*, 164 F3d 1191, *on reh'g* 172 F3d 689 (9th Cir 1999), the government sought forfeiture of the subject property in a civil proceeding on the ground that the defendant had fraudulently obtained a loan to refinance her house in violation of federal law. The Ninth Circuit noted that the defendant "ha[d] not been charged with any related criminal activity, or for that matter, with any criminal activity at all." *Thurman*, 164 F3d at 1197. Nonetheless, the court held that a forfeiture under a statutory proceeding similar to the one at issue here violated the Excessive Fines Clause of the Eighth Amendment.

When the facts of this case are compared with the facts in *Austin* and *Thurman*, there is little difference. If anything, defendant should be in a better position than Austin, who had been convicted of criminal charges. It is clear from those cases that a civil forfeiture can constitute "punishment" under section 16 and the Eighth Amendment when the forfeiture is not remedial in nature, whether the underlying action is civil or criminal in nature and whether or not the defendant is convicted of a crime. Here, defendant did not voluntarily place his animals with the humane society. They were seized and impounded by the government because of pending criminal charges. Had the animals been sold to pay for the humane society's cost of care and had the balance from the sales price after compensating the humane society for their out-of-pocket expense been remitted to defendant, the forfeiture would not have been excessive. But that is not what occurred here. As a result of the criminal prosecution against him, defendant lost all of the value of his animals. To the extent of $2,700, the forfeiture could be considered "remedial" in nature. Beyond that amount, it is necessarily "punitive." In defendant's case, any punishment is necessarily excessive in light of his acquittal. The framers of the constitutions could not have intended that the fortuity of acquittals

requires the trial court to consider "whether any portion of the proposed judgment of forfeiture is excessive" and lists the particular factors that the court must consider. For purposes of Article I, section 16, a forfeiture under ORS 167.347 should not be treated differently from a forfeiture under ORS 475A.100.

could operate to permit the government to obtain a forfeiture beyond that which would have been available had there been a conviction.

Because defendant has been "punished" for his alleged criminal conduct by the loss of the entire value of his animals, I dissent.