## ROSS v. STATE OF OREGON.

### ERROR TO THE SUPREME COURT OF THE STATE OF OREGON.

No. 75. Argued December 6, 1912.—Decided January 27, 1913.

The prohibition in § 10 of Article I of the Constitution against *ex post facto* laws is a restraint upon the legislative power of the States and concerns the making of laws and not their construction by the courts.

While that prohibition is directed against legislative acts, and reaches every form in which the legislative power acts, and while a judicial decision is the act of an instrumentality of the State, if the purpose of that decision is not to prescribe a new law for the future but only to apply laws in force at the time to completed transactions, the ruling is a judicial and not a legislative act, and no Federal right or

question is involved under the *ex post facto* provision of the Constitution.

The purpose of a judicial inquiry is to enforce laws as they are at present; legislation looks to the future and changes existing conditions by making new laws to be applicable hereafter. *Prentis* v. *Atlantic Coast Line*, 211 U. S. 210, 226.

Whether an amendment to the state constitution requiring prosecutions for crime to be based on indictment applies to pending cases is a question of local law and the decision of the state court is not reviewable here; and the decision of that court that such an amendment did not repeal the statute under which a prosecution based on an information already instituted does not deprive plaintiff in error of his liberty without due process of law under the Fourteenth Amendment of the Federal Constitution and no Federal question is involved giving this court jurisdiction to review the judgment of conviction.

Where the record presents no Federal question, the writ of error must be dismissed and this court cannot discuss the merits of the questions presented and determined in the state court.

Writ of error to review 55 Oregon, 450, dismissed.

THE facts, which involve the jurisdiction of this court to review judgments of the state courts under § 709, Rev. Stat., and what constitutes an *ex post facto* law, are stated in the opinion.

*Mr. William D. Guthrie*, with whom *Mr. Wallace Mc-Camant* was on the brief, for plaintiff in error:

Federal questions were duly raised in the state court. *Beardsley* v. *N. Y., L. E. & W. R. R. Co.*, 162 N. Y. 230; *Baker* v. *Williams & England Banking Co.*, 42 Oregon, 213; *Blythe* v. *Hinckley*, 180 U. S. 333; *Forbes* v. *State Council of Virginia*, 216 U. S. 396; *Gelpcke* v. *Dubuque*, 1 Wall. 175; *Harding* v. *Illinois*, 196 U. S. 78; *McCorquodale* v. *Texas*, 211 U. S. 432; *Muhlker* v. *Harlem R. R. Co.*, 197 U. S. 544; *Water Power Co.* v. *Street Railway Co.*, 172 U. S. 475; *Yazoo & Miss. Rd. Co.* v. *Adams*, 180 U. S. 41.

The decision of a court may constitute an *ex post facto* law. *Bailey* v. *Alabama*, 219 U. S. 219; *Pendey* v. *Townsend*, 109 U. S. 665; *Bors* v. *Preston*, 111 U. S. 252; *Boyd*

v. *United States*, 116 U. S. 616; *Brown v. Maryland*, 12 Wheat. 419; *Bucher v. Cheshire Rd. Co.*, 125 U. S. 555; *Burgess v. Salmon*, 97 U. S. 381; *Butz v. City of Muscatine*, 8 Wall. 575; *Capital Traction Co. v. Hof*, 174 U. S. 1; *C., B. & Q. R. R. v. Chicago*, 166 U. S. 226; *Cross Lake Club v. Louisiana*, 224 U. S. 632; *Cummings v. Missouri*, 4 Wall. 277; *Douglass v. County of Pike*, 101 U. S. 677; *Dreyer v. Illinois*, 187 U. S. 71; *Ferris v. Higley*, 20 Wall. 375; *Fitzpatrick v. Simonson Bros. Mfg. Co.*, 86 Minnesota, 140; *Gelpcke v. Dubuque*, 1 Wall. 175; *Hinde v. Vattier*, 5 Pet. 398; *Kring v. Missouri*, 107 U. S. 221; *Kuhn v. Fairmont Coal Co.*, 215 U. S. 349; *Lorings v. Marsh*, 6 Wall. 337; *Louisiana v. Pilsbury*, 105 U. S. 278; *Muhlker v. Harlem R. R. Co.*, 197 U. S. 544; *Nashua Savings Bank v. Anglo-American Co.*, 189 U. S. 221; *Nelson v. Kerr*, 2 T. & C., 299; 59 N. Y. 224; *People ex rel. Steward v. Railroad Commissioners*, 160 N. Y. 202; *Prentis v. Atlantic Coast Line*, 211 U. S. 210; *Raymond v. Chicago Traction Co.*, 207 U. S. 20; *Scott v. McNeal*, 154 U. S. 34; *Smith v. United States*, 1 Gall. 261; *Soliah v. Heskin*, 222 U. S. 522; *State v. Clark*, 9 Oregon, 466; *State v. Dyer*, 67 Vermont, 690; *State v. O'Neil*, 147 Iowa, 513; *United States v. Wong Kim Ark*, 169 U. S. 649; *Ex parte Virginia*, 100 U. S. 339; *Virginia v. Rives*, 100 U. S. 313; *Westinghouse Air Brake Co. v. Kansas City So. Ry. Co.*, 137 Fed. Rep. 26; *Wisconsin v. Pelican Ins. Co.*, 127 U. S. 265; *Yick Wo v. Hopkins*, 118 U. S. 356.

There is no room for the construction of a statute if there be no reasonable ambiguity. *Hamilton v. Rathbone*, 175 U. S. 414; *Sarlls v. United States*, 152 U. S. 570; *State v. Mann*, 2 Oregon, 238; *The Ben R.*, 134 Fed. Rep. 784; *United States v. Brewer*, 139 U. S. 278; *United States v. Chase*, 135 U. S. 255; *United States v. Goldenberg*, 168 U. S. 95; *United States v. Sharp*, Peters C. C. 118; *United States v. Wiltberger*, 5 Wheat. 76.

The facts show the arbitrary character of the statu-

ROSS *v.* OREGON.·          .153

2$\overset{\backslash}{2}$7 U. S.          Argument for Plaintiff in Error.

tory construction and the *ex post facto* operation of the law enforced by the court below. *Bank of the Republic* v. *Millard,* 10 Wall. 152; *Baker* v. *Williams & England Banking Co.,* 42 Oregon, 213; *Henry County* v. *Salmon,* 201 Missouri, 136; *Leather Manufacturers' Bank* v. *Morgan,* 117 U. S. 96; *Lloyd* v. *Matthews,* 155 U. S. 222; *Phœnix Bank* v. *Risley,* 111 U. S. 125; *State* v. *Bartley,* 39 Nebraska, 353; *State* v. *Minn. & St. L. Ry. Co.,* 88 Iowa, 689; *State* v. *Vermont Cent. Rd. Co.,* 30 Vermont, 108; *State* v. *Wabash Ry. Co.,* 115 Indiana, 466; *Thompson* v. *Riggs,* 5 Wall. 663.

Jurisdiction is an essential element of due process of law under the Fourteenth Amendment. *Ex parte Bain,* 121 U. S. 1; *Ex parte Bergman,* 130 S. W. Rep. 174; *Bradley* v. *Union Bridge & Construction Co.,* 185 Fed. Rep. 544; *Commonwealth* v. *Duane,* 1 Binney, 601; *Commonwealth* v. *Kimball,* 21 Pick. 373; *Dartmouth College* v. *Woodward,* 4 Wheat. 518; *Drinkall* v. *Spiegel,* 68 Connecticut, 411; *Garnsey* v. *State,* 4 Okla. Cr. 547; *Gibbons* v. *Ogden,* 9 Wheat. 1; *Hartung* v. *The People,* 22 N. Y. 95; *Matter of Hope,* 7 N. Y. Cr. 406; *Howard* v. *State,* 5 Indiana, 183; *Hubbard* v. *State,* 2 Tex. App. 506; *Hurtado* v. *California,* 110 U. S. 516; *Keller* v. *State,* 12 Maryland, 322; *Kenyon* v. *State,* 31 Texas Cr. 13; *Montague* v. *State,* 54 Maryland, 481; *People* v. *Tisdale,* 57 California, 104; *Scott* v. *McNeal,* 154 U. S. 34; *Sheppard* v. *State,* 1 Tex. App. 522; *Speckert* v. *City of Louisville,* 78 Kentucky, 287; · *State* v. *Allen,* 14 Washington, 103; *State* v. *Daley,* 29 Connecticut, 272; *State* v. *Ingersoll,* 17 Wisconsin, 651; *State* v. *Ju Nun,* 53 Oregon, 1; *State* v. *King,* 12 La. Ann. 593; *State* v. *Kingsly,* 10 Montana, 537; *State* v. *Langworthy,* 55 Oregon, 303; *State* v. *Mason,* 108 Indiana, 48; *State* v. *Schluer,* 59 Oregon, 18; *Tuton* v. *State,* 4 Tex. App. 472; *Twining* v. *New Jersey,* 211 U. S. 78; *United States* v. *London,* 176 Fed. Rep. 976; *Wall* v. *State,* 18 Texas, 682; *Ex parte Wilson,* 114 U. S. 417.

*Mr. A. M. Crawford,* Attorney General of the State of Oregon, *Mr. George J. Cameron* and *Mr. Martin L. Pipes,* for defendant in error, submitted:

The Supreme Court has no jurisdiction to review the decision of a state court except upon a Federal question specially set up or claimed in the state court. *Mutual Insurance Co. of New York* v. *McGrew,* 188 U. S. 291; *Michigan Sugar Co.* v. *Dix,* 185 U. S. 112; *Oxley Stave Co.* v. *Butler Co.,* 166 U. S. 648.

The construction given to a statute or constitution of the State by the highest court of such State is regarded as part of the statute or constitution, and is as binding as the text upon the Supreme Court of the United States. *Leffingwell* v. *Warren,* 2 Black, 595; *Russell* v. *Ely,* 2 Black, 575; *Oaks* v. *Mace,* 165 U. S. 363; *Stone* v. *Wisconsin,* 94 U. S. 181; *Sumner* v. *Hicks,* 2 Black, 352; *Adams* v. *Nashville,* 95 U. S. 19; *Nobles* v. *Georgia,* 168 U. S. 398; *New York, L. E. & W. R. Co.* v. *Pennsylvania,* 158 U. S. 431; *Baltimore Traction Co.* v. *Baltimore Belt R. Co.,* 151 U. S. 137; *Olcott* v. *Fond du Lac Co.,* 16 Wall. 678; *Missouri, K. & T. R. Co.* v. *McCann,* 174 U. S. 586; *Waters-Pierce Oil Co.* v. *Texas,* 177 U. S. 28; *Tullis* v. *Lake Erie & Western R. Co.,* 175 U. S. 348; *Iacardi* v. *Alabama,* 19 Wall. 635; *Fairfield* v. *Gallatin Co.,* 100 U. S. 47; *Morley* v. *Lake Shore & Michigan Southern R. Co.,* 146 U. S. 162; *Louisiana* v. *Pillsbury,* 105 U. S. 294.

The construction of the state court that a statute under which a person has been convicted is prospective only will be followed in the Federal court on the question whether or not the statute is an *ex post facto* law. *Jaehne* v. *New York,* 128 U. S. 190; *In re Jaehne,* 35 Fed. Rep. 357.

An *ex post facto* law is one which imposes a punishment for an act which was not punishable at the time it was committed, or imposes additional punishment to that then prescribed. *Calder* v. *Bull,* 3 Dall. 386; *Mallet* v. *North Carolina,* 181 U. S. 590.

The constitutional provision against *ex post facto* laws applies only to criminal or penal statutes. *Ogden* v. *Sanders*, 12 Wheat. 213; *League* v. *Texas*, 184 U. S. 161; *Calder* v. *Bull, supra; Locke* v. *New Orleans*, 4 Wall. 172.

The constitutional provision that no State shall pass an *ex post facto* law refers to a legislative enactment and not to a judicial decision.

A contract can only be impaired within the meaning of the United States Constitution so as to give this court jurisdiction on writ of error to a state court by some subsequent statute of the State which has been upheld or given effect by the state court. *Bacon* v. *State of Texas*, 163 U. S. 207; *New Orleans Water Works Co.* v. *Louisiana Sugar Ref. Co.*, 125 U. S. 118; *Central Land Co.* v. *Laidley*, 159 U. S. 103, 109; *Turner* v. *Board of Commissioners of Wilkes County*, 173 U. S. 461.

The Federal Supreme Court will not hold a state statute void on the ground that it impairs the obligation of contracts unless it impairs the obligation of the particular contract which is involved in the controversy. *Lehigh Water Co.* v. *Easton*, 121 U. S. 388.

MR. JUSTICE VAN DEVANTER delivered the opinion of the court.

This was a criminal prosecution in the State of Oregon, instituted by an information charging the defendants, of whom the plaintiff in error was one, with having converted to their own use a large sum of money belonging to the State's Irreducible School Fund, Agricultural College Fund and University Fund, collectively spoken of as educational funds, then held for safe-keeping in a bank of which the defendants were in control as its officers and directors. Upon a separate trial of the plaintiff in error he was convicted and sentenced to a term of imprisonment and to pay a fine. An appeal to the Supreme Court of the State resulted in the elimination of the fine and in the

affirmance of the judgment in other respects.  55 Oregon, 450.  The plaintiff in error then brought the case here, claiming that rights secured to him by the Constitution of the United States, and specially set up in the Supreme Court of the State, were denied by the judgment of affirmance.

Briefly outlined, the case, as we must take it to be, is as follows: In June, 1907, the bank became an "active depository" under a statute of the State presently to be mentioned, and thereupon an account was opened with the bank as such depository in the name of the state treasurer, with the added designation "educational."  The deposits going into the account consisted of checks and drafts belonging to the State's educational funds, and the money collected by the bank on these checks and drafts, less what was drawn out by the State, amounted on November 6, 1907, to $288,426.87.  On that day the bank failed, and it was then disclosed that on August 21 the total cash in the bank was $296.19 short of the amount called for by the account and that this shortage had continued and increased until the day of the failure, when it reached $274,882.73.  The defendants had not literally appropriated any of the money to their personal use, but, knowing that it belonged to the State's educational funds and was received and held by the bank as an active depository, had permitted it to be commingled with other deposits and funds and had sanctioned its use in paying liabilities of the bank.

The prosecution was founded upon § 1807 of Bellinger & Cotton's Codes of Oregon, which declares: "If any person shall receive any money whatever for this State, . . . or shall have in his possession any money whatever belonging to such State, . . . and shall in any way convert to his own use any portion thereof, . . . such person shall be deemed guilty of larceny."

By an act taking effect May 26, 1907, Laws of 1907, c. 135, p. 248, the legislature of the State provided for the designation of "State depositories for the purpose of receiving on deposit funds of this State, and paying out the same on order or checks of the State treasurer" (§§ 1, 2); made it the duty of the treasurer to "deposit and at all times keep on deposit" in such depositories the "money in his hands belonging to the several funds in the State treasury," excepting a reserve of not to exceed $100,000 with which to pay current obligations (§ 3); required each depository to pay interest on deposits of such funds at not less than two per cent. per annum (§§ 3, 4) and to give approved security "for the payment of such deposits and the interest thereon" (§ 5); and made the following declaration relating to educational funds (§ 16): "The word 'funds' used in this act shall apply to all funds in the State treasury except the common school,[1] agricultural college, and university funds."

The same act authorized the designation of "an active depository for the collection of any drafts, checks, certificates of deposit and coupons that may be received by him [the treasurer] on account of any claim due the State" (§ 6); required such depository to give approved security "for the prompt collection of all drafts, checks, certificates of deposit, or coupons that may be delivered to such active depository by the State treasurer for collection; also, for the safekeeping and prompt payment on the State treasurer's order of the proceeds of all such collections" (§ 7); and in that connection provided (§ 8): "The State treasurer, on receipt of any draft, check or certificate of deposit, on account of State dues, may place the same in such active depository for collection, and it shall be the

---

[1] The common school fund and the irreducible school fund appear to have been identical. Ore. Const., Art. VIII, § 2; Ore. Laws 1907, c. 117, § 36.

duty of such active depository to collect the same without delay, without charge for its services for such collection, or for exchange, and to notify the State treasurer when collected. The compensation to be paid by such active depository shall be fixed by the State treasurer upon the best terms obtainable for the State." The word "funds" particularly defined in § 16, as before quoted, was not used in any of the sections having special relation to the active depository.

Before the passage of the depository act the Supreme Court of the State had occasion to consider and determine, in *Baker* v. *Williams Banking Co.*, 42 Oregon, 213, 222–225, whether, in view of § 1807 of Bellinger & Cotton's Codes (then § 1772, Hill's Ann. Laws), the state treasurer lawfully could make a general deposit in a bank of money of the State belonging to its educational funds, and it was held that he could, the court saying:

"It is made a felony by statute for any person having in his possession any money belonging to the State, county, town, or other municipality to convert to his own use or loan the same, with or without interest (Hill's Ann. Laws, § 1772); and, while a mere deposit in a bank for safe-keeping is not inhibited by this provision, it is manifest that in case of the failure of the bank the officer is not entitled to interest in his own right on the fund so deposited, whatever the right of the State or municipality might be in the premises. If, therefore, the claims are in fact for public money, as the objectors allege, no interest should be allowed thereon. A public officer may not loan, with or without interest, any part of the public funds in his possession, without being guilty of a felony; but he is required to keep such funds safely, and for that purpose may deposit them in a bank, provided they are at all times subject to his order, and there is no fixed period during which he has no right to demand their return. . . . The deposit is made on his own personal responsibility,

however; and if, in the case of the failure of the bank, he makes the loss good, the money deposited must necessarily become his property, and thereafter be considered and treated as such."

After that decision and before the transactions here in question the depository act was passed and put in force, but its construction and operation were not determined by the Supreme Court of the State until it passed upon the case at bar. It was then held (a) that the act made provision for general depositories, wherein moneys of the State, not belonging to the educational funds, were to be placed as general deposits, with the right in the depository to commingle them with other deposits and to loan them in the usual course of business, and with an absolute obligation on the depository to pay interest on them at not less than two per cent. per annum; (b) that the act also made provision for an active depository for the collection of checks, drafts and the like, belonging to any state fund, whether educational or otherwise, and the safe-keeping of the proceeds subject to the treasurer's order, but with no right in the depository to commingle them with other deposits or to loan them, and with no specific or absolute obligation on the depository to pay interest thereon; (c) that by contrasting the provisions relating to general depositories with those relating to the active depository it was evident that deposits in the latter, unlike deposits in the former, were to be special, the title not passing to the depository but remaining in the State; and (d) that the act operated, and the legislature intended, to take the educational funds out of the custom or right of the treasurer to make general deposits which was recognized in *Baker* v. *Williams Banking Co., supra.* Then coming to apply the act, as so construed, together with § 1807, to the facts of the case as reflected by the verdict of the jury, it was further held (1) that the bank held the money as a special deposit, the title being in the State; (2) that the

defendants, being in control of the bank as its officers and directors and knowing of the deposit, were to be regarded as having the money in their possession within the meaning of § 1807; (3) that the commingling of the money with other deposits and the using of it in paying liabilities of the bank constituted an unlawful appropriation of it; and (4) that as the defendants, as controlling officers and directors of the bank, sanctioned that appropriation, knowing that the money belonged to the educational funds of the State and was held by the bank as an active depository, they thereby converted the money to their own use within the meaning of § 1807, even although the appropriation was for the benefit of the bank and not of themselves personally.

It will be perceived that but for the depository act, as so construed, the deposit would have been a general one, merely creating the relation of debtor and creditor between the bank and the State, and the commingling and use of the money in the manner shown would not have been a crime under § 1807.

The record shows that the plaintiff in error contended in the Supreme Court of the State that the depository act was not reasonably susceptible of the construction ultimately adopted, and that to put such a construction upon it would be violative of the prohibition in the Constitution of the United States against *ex post facto* state laws. Both phases of the contention were denied, the second necessarily failing with the first, and the plaintiff in error now assigns error upon that holding and complains that it deprived him of a right secured by the Constitution.

Bearing in mind what has been said, and especially that the depository act and § 1807 were both in force at the time of the alleged offense, it will be perceived that the real complaint which we are asked to consider is, not that the Supreme Court of the State in any wise

rested its judgment upon a statute passed after the time of the alleged offense, but only that it misconstrued a preëxisting statute to the disadvantage of the plaintiff in error and that such a decision is an *ex post facto* law within the meaning of Art. I, § 10, of the Constitution, which declares: "No State . . . shall pass any bill of attainder, *ex post facto* law, or law impairing the obligation of contracts."

But that provision of the Constitution, according to the natural import of its terms, is a restraint upon legislative power and concerns the making of laws, not their construction by the courts. It has been so regarded from the beginning. In *Calder* v. *Bull,* 3 Dall. 386, one of the first cases in which the provision was considered, it was spoken of as reaching legislative, but not judicial, acts; and in *Fletcher* v. *Peck,* 6 Cranch, 87, 138, Chief Justice Marshall said of it: "In this form the power of the legislature over the lives and fortunes of individuals is expressly restrained." True, neither of those cases turned upon the question whether the words "no State shall pass a law" embrace a decision of a court construing a statute, but that question was both presented and decided in *Commercial Bank* v. *Buckingham's Executors,* 5 How. 317. There the Supreme Court of Ohio, in an action upon a contract, had put upon two preëxisting statutes of the State a construction which was claimed to be unreasonable and to impair the obligation of the contract, and it was sought to have that decision reviewed by this court on the ground that it denied a right secured by the Constitution of the United States. But the writ of error was dismissed for want of jurisdiction, because, as was said in the opinion (p. 342): "If this court were to assume jurisdiction of this case, it is evident that the question submitted for our decision would be, not whether the statutes of Ohio are repugnant to the constitution of the United States, but whether the Supreme Court of

Ohio has erred in its construction of them.  It is the peculiar province and privilege of the state courts to construe their own statutes; and it is no part of the functions of this court to review their decisions, or assume jurisdiction over them on the pretence that their judgments have impaired the obligation of contracts.  The power delegated to us is for the restraint of unconstitutional legislation by the States, and not for the correction of alleged errors committed by their judiciary."  A like question was presented, and similarly disposed of, in *New Orleans Water Works Co.* v. *Louisiana Sugar Refining Co.,* 125 U. S. 18, 30, where it was said: "In order to come within the provision of the Constitution of the United States which declares that no State shall pass any law impairing the obligation of contracts, not only must the obligation of a contract have been impaired, but it must have been impaired by a law of the State.  The prohibition is aimed at the legislative power of the State, and not at the decisions of its courts, or the acts of administrative or executive boards or officers, or the doings of corporations or individuals."  And in *Brown* v. *Smart,* 145 U. S. 454, 458, where a decision of the Court of Appeals of Maryland, expounding a statute of that State, was challenged as impairing the obligation of a contract made after the statute came into existence, it was held that the decision "was not a law" within the meaning of the provision against the impairment of contractual obligations by state laws.  Many other cases give effect to this ruling, but it will suffice to cite, from among them, *Central Land Co.* v. *Laidley,* 159 U. S. 103, 109; *Bacon* v. *Texas,* 163 U. S. 207, 220; *Hanford* v. *Davies, Ibid.* 273, 278; *Turner* v. *Wilkes County,* 173 U. S. 461; *Cross Lake Shooting & Fishing Club* v. *Louisiana,* 224 U. S. 632, 638.

But whilst thus uniformly holding that the provision is directed against legislative, but not judicial, acts, this court with like uniformity has regarded it as reaching

every form in which the legislative power of a State is exerted, whether it be a constitution, a constitutional amendment, an enactment of the legislature, a by-law or ordinance of a municipal corporation, or a regulation or order of some other instrumentality of the State exercising delegated legislative authority. *New Orleans Water Works Co.* v. *Louisiana Sugar Refining Co., supra; St. Paul Gas Light Co.* v. *St. Paul,* 181 U. S. 142, 148; *Davis & Farnum Manufacturing Co.* v. *Los Angeles,* 189 U. S. 207, 216; *Grand Trunk Railway Co.* v. *Railroad Commission of Indiana,* 221 U. S. 400, 403. Of course, the ruling here in question was by an instrumentality of the State, but as its purpose was, not to prescribe a new law for the future, but only to apply to a completed transaction laws which were in force at the time, it is quite plain that the ruling was a judicial act and not an exercise of legislative authority. As was said in *Prentis* v. *Atlantic Coast Line Co.,* 211 U. S. 210, 226: "A judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist. That is its purpose and end. Legislation, on the other hand, looks to the future and changes existing conditions by making a new rule to be applied thereafter to all or some part of those subject to its power."

The plaintiff in error cites the cases of *Kring* v. *Missouri,* 107 U. S. 221; *Muhlker* v. *New York & Harlem Railroad Co.,* 197 U. S. 544; *Louisiana* v. *Pilsbury,* 105 U. S. 278; *Gelpcke* v. *Dubuque,* 1 Wall. 175, and *Butz* v. *City of Muscatine,* 8 Wall. 575, as holding that a judicial decision may be a law in the sense of the constitutional provision which he invokes. But none of those cases, when rightly considered, sustains that position. The first was a criminal case in which a provision in a new constitution was held to be an *ex post facto* law as to an offense theretofore committed; the second presented the question whether a state statute of 1892 impaired contractual obligations

created by deeds of a much earlier date; the third and fourth were explained in *Central Land Co.* v. *Laidley,* 159 U. S. 103, 111–112; *Bacon* v. *Texas,* 163 U. S. 207, 221–223, and *Turner* v. *Wilkes County, supra,* and were there shown not to be in conflict with other cases on the subject, and the fifth is in no wise distinguishable from the fourth.

We conclude that no Federal right was involved in the ruling respecting the construction of the depository act.

The prosecution was instituted by an information conformably to a law of the State in force at the time. Bellinger & Cotton's Codes, § 1258. Following the judgment of conviction, and while the case was pending on appeal, a constitutional amendment was adopted, declaring: "No person shall be charged in any circuit court with the commission of any crime or misdemeanor defined or made punishable by any of the laws of this State, except upon an indictment found by a grand jury." The plaintiff in error thereupon advanced the contention that the constitutional amendment worked a repeal of the statute under which the information was filed and made it impossible to enforce the judgment against him without depriving him of his liberty without due process of law, contrary to the Fourteenth Amendment to the Constitution of the United States. The state court ruled that the amendment to the state constitution was prospective and did not affect pending cases. Error is now assigned upon that ruling. But it involved nothing more than the construction of the constitutional amendment, which was a question of local law, and its decision by the state court is not reviewable here.

As the record presents no Federal question, we are without jurisdiction to review the judgment, and therefore cannot enter into the merits of the questions that were presented and determined in the state court.

*Writ of error dismissed.*