RESOLUCIÓN
El peticionario José Gotay Flores nos solicita que revo-quemos una sentencia dictada por el Tribunal de Apelacio-nes, mediante la cual se confirmó una resolución emitida por la Administración de Corrección (AC). En ella la agen-cia aplicó las disposiciones de su Reglamento para la Con-cesión de Permisos a los Miembros de la Población Correc-cional para Salir o Residir Fuera de las Instituciones Correccionales del Estado Libre Asociado de Puerto Rico, Reglamento Núm. 7595 de 24 de octubre de 2008 (Regla-mento Núm. 7595) y denegó la solicitud del peticionario para ser referido al programa de pases para salir fuera de las instituciones penales. A esos efectos, el peticionario *704 alega que la aplicación del Reglamento Núm. 7595 a sus circunstancias viola la protección constitucional contra le-yes ex post facto, debido a que el reglamento fue aprobado con posterioridad a la fecha en la que se cometieron los actos delictivos. Luego de examinar el recurso presentado por la parte peticionaria y acogerlo como certiorari, 4 L.RR.A. Ap. XXI-A, R.19(2), se declara “no ha lugar”. Es-bozamos los antecedentes fácticos de mayor relevancia que dieron origen al recurso que nos ocupa.
I
Por hechos ocurridos el 24 de septiembre de 1991, el 8 de mayo de 1992 el Tribunal de Primera Instancia dictó sentencia contra el Sr. José Gotay Flores, luego de encon-trarlo culpable por los delitos de asesinato en primer grado y violación a la Ley de Armas de Puerto Rico. Al señor Gotay Flores se le impuso una pena de ciento ocho años de reclusión.
Años más tarde, el 1 de diciembre de 2009, el señor Go-tay Flores solicitó a la AC que lo refiriera al programa de pases de esa agencia. Días después ésta emitió una resolu-ción y denegó la petición del señor Gotay Flores. Indicó que su solicitud era improcedente, puesto que el Reglamento Núm. 7595 excluye expresamente a los convictos por viola-ción a la Ley de Armas de Puerto Rico. Además, la AC señalo que mediante el Art. 2 de la Ley Núm. 49 de 26 de mayo de 1995, según enmendada, 4 L.P.R.A. see. 1136a(a)(l), los convictos por el delito de asesinato tampoco cualifican para recibir ese privilegio.
Luego de varios trámites procesales y de impugnada la determinación de la AC ante el Tribunal de Apelaciones, el foro apelativo intermedio dictó sentencia para confirmar la resolución recurrida. En ella, indicó que la aplicación re-troactiva del Reglamento Núm. 7595 a la solicitud del se- *705 ñor Gotay Flores no iba en detrimento de la protección constitucional que prohíbe las leyes ex post facto. Ello, pues la Ley Núm. 49 (4 L.P.R.A. sees. 1112,1136a, 1136b y 1201) y el citado Reglamento Núm. 7595 establecen que los con-victos por el delito de asesinato no cualifican para el privi-legio solicitado.
Inconforme, el señor Gotay Flores acudió ante nos y se-ñaló que el Tribunal de Apelaciones erró al confirmar el dictamen emitido por la AC. Sustentó esa alegación en que su solicitud debió ser evaluada según el Reglamento para la Concesión de Permisos a los Confinados para salir fuera de las Instituciones Penales, Reglamento Núm. 2678 del Departamento de Estado de 24 de julio de 1980 —vigente cuando el señor Gotay Flores cometió los hechos delicti-vos— y no el Reglamento Núm. 7595 de esa entidad. Ello se alegó al amparo de la cláusula constitucional que pro-híbe leyes ex post facto.
II
Las Constituciones de Estados Unidos de América y de Puerto Rico, entre otras cosas, pretenden imponer limita-ción al poder punitivo del Estado, ejercido por las distintas ramas de gobierno. Así, mediante la protección constitucio-nal contra leyes ex post facto, se le prohíbe a la Asamblea Legislativa criminalizar una conducta de manera retroactiva. L.E. Chiesa Aponte, Derecho Penal Sustantivo, Pubs. JTS, 2007, pág. 16. Esta protección constitucional intenta garantizar “que los ciudadanos tengan un aviso adecuado acerca de la conducta prohibida mediante las le-yes penales” como también “intenta evitar una aplicación arbitraria y vengativa de los estatutos criminales”. íd., pág. 20.
En específico, es ex post facto toda ley que: (1) crimina-liza y castiga un acto que al momento de ser cometido no estaba tipificado como delito; (2) agrava un delito o lo hace *706 mayor de lo que era al momento en que fue cometido; (3) altera el castigo imponiendo una pena mayor que la fijada para el delito al ser cometido; (4) altera las reglas de evi-dencia exigiendo menos prueba que la requerida por ley cuando el delito fue cometido. González v. E.L.A., 167 D.P.R. 400, 408 (2006); Pueblo en interés menor F.R.F., 133 D.P.R. 172 (1993); Fernández v. Rivera, Jefe de Presidio, 70 D.P.R. 900 (1949).
De ordinario, la protección constitucional que prohíbe leyes ex post facto no se extiende a los actos judiciales, estatutos de carácter civil, órdenes administrativas, decla-raciones de política pública ni reglas interpretativas o de carácter procesal. González v. E.LA., supra, págs. 409-410. Véase, además, Pueblo v. Candelario, 166 D.P.R. 118 (2005). Asimismo, en cuanto al ámbito administrativo, esta protección constitucional aplica únicamente cuando la re-glamentación administrativa acarrea consecuencias penales. González v. E.L.A., supra, pág. 410. Véase Ross v. Oregon, 227 U.S. 150 (1913). C.f. Bailey v. Gardening, 940 F.2d 1150, 1157 (8vo Cir. 1991). Ello es así, pues mediante la aprobación de reglamentos las agencias administrativas ejercen poderes que le han sido delegados válidamente por la Asamblea Legislativa. González v. E.L.A., supra, pág. 410.
Ahora bien, no toda ley penal o reglamento administra-tivo es ex post facto. Para que así sea catalogado y, por ende, declarada inconstitucional, ese estatuto o regla-mento tiene que ser aplicado retroactivamente y ser más oneroso que la disposición legal vigente a la fecha cuando se cometió el delito. González v. E.L.A., supra, pág. 409. Cónsono con lo anterior, en California Dept. of Corrections et al. v. Morales, 514 U.S. 499 (1995), el Tribunal Supremo federal resolvió que la aplicación retroactiva de leyes apro-badas con posterioridad a la comisión de los actos delicti-vos no viola la referida protección constitucional siempre que ese estatuto —o reglamento— no aumente la pena que *707 se le impuso al confinado por la comisión de los delitos o presente suficiente riesgo de incrementar esa pena.
Claro está, la normativa señalada no ignora los pronun-ciamientos de Weaver v. Graham, 450 U.S. 24 (1981). En esa ocasión, el Tribunal Supremo federal revocó un dicta-men del Tribunal Supremo del estado de Florida mediante el cual se resolvió que la aplicación ex post facto de una ley estatal que reducía la cantidad de tiempo que un confinado podía restar al período de su convicción si mantenía buena conducta (bonificaciones por buena conducta) no era inconstitucional. Al así proceder, el Tribunal Supremo federal señaló que la aplicación retroactiva de esa ley estatal sí alteraba la pena impuesta al reo. Es decir, sí se afecta-ban aspectos penales sustantivos. Ahora bien, vale mencio-nar que Weaver v. Graham, supra, pág. 29 esc. 12, el Tribunal Supremo federal, por voz del Juez Asociado Señor Thurgood Marshall, indicó que “no ocurre una violación ex post facto si la aplicación retroactiva es, en efecto, mera-mente procesal, no aumenta la pena o cambia los requisi-tos del delito o altera la forma en que se establece culpabilidad”. (Traducción nuestra.) Citando a Hopt v. Utah, 110 U.S. 574, 590 (1884).
Posteriormente, en Lynce v. Mathis, 519 U.S. 433 (1997), el Tribunal Supremo federal tuvo la oportunidad de distin-guir las normativas pautadas en Weaver v. Graham, supra, y en California Dept. of Corrections et al. v. Morales, supra. Así, ante una ley del Estado de Florida que cancelaba unos créditos provisionales que disminuían la pena que el confi-nado debía cumplir, sin importar que esos créditos ya hubie-ran sido otorgados a los confinados o —como en otros ca-sos— que éstos ya habían sido puestos en libertad, el Tribunal Supremo federal señaló que la aplicación retroac-tiva de esta ley iba en detrimento de la cláusula constitucio-nal que protege contra las leyes ex post facto. Ello, pues, aumentaba la pena que el confinado cumpliría. Lynce v. Mathis, supra, citando a Weaver v. Graham, supra.
*708 Por otro lado, en González v. E.L.A., supra, nos expresa-mos ante la revocación del privilegio libertad con supervi-sión electrónica, concedido erróneamente. Allí, catorce con-victos impugnaron su reingreso a la institución correccional tras la aprobación de la Ley Núm. 49, supra. Esta ley excluyó de ese privilegio a los convictos por el delito de asesinato. A estos efectos, resolvimos que la apli-cación retroactiva de la Ley Núm. 49, supra, no infringía la cláusula constitucional de leyes ex post facto. Ello, pues para el momento en que trece de los catorce convictos co-metieron los hechos delictivos no existía disposición legal alguna que regulara la concesión de libertad con supervi-sión electrónica. En otras palabras, “el programa simple-mente no existía”. González v. E.L.A., supra, pág. 415.
Sin embargo, debe tenerse presente que aun cuando el desenlace de González v. E.L.A., supra, fue distinto al de Weaver v. Graham, supra —debido a la ausencia de una ley que regulara el privilegio concedido erróneamente— indi-camos que lo importante en estas instancias es examinar si, en comparación con la vieja ley, el nuevo estatuto alarga la pena que cumplirá el confinado. González v. E.L.A., supra, pág. 415; Weaver v. Graham, supra. En otras palabras, al determinar si una ley penal es más onerosa que la vi-gente al momento en que se cometieron los actos delictivos es necesario examinar si, en comparación con el estatuto antiguo, la nueva ley tiene el efecto de alargar o prolongar la pena impuesta que el autor del delito deberá cumplir.
III
En el caso de autos, el peticionario aduce que la AC erró al evaluar su solicitud para el programa de pases utili-zando el Reglamento Núm. 7595 y no el Reglamento Núm. 2678, ambos de esa agencia. No le asiste la razón.
Como mencionamos, aun cuando se ha resuelto que la protección constitucional de leyes ex post facto aplica a la *709 reglamentación administrativa que acarrea consecuencias penales, Ross v. Oregon, supra, en esta ocasión los actos de la AC no van en detrimento de esa protección. Ello, pues no incrementa la pena que se le impuso al peticionario por la comisión del delito de asesinato y violación a la Ley de Armas de Puerto Rico. González v. E.L.A., supra; Lynce v. Mathis, supra; California Dept. of Corrections et al. v. Morales, supra; Weaver v. Graham, supra. No se trata en esta ocasión, pues, de un programa administrativo que conceda bonificaciones o créditos atribuibles a la pena impuesta. Más bien, la situación ante nos involucra la concesión de un privilegio —y no un derecho— como una medida de tra-tamiento individualizado para el confinado.
De ninguna manera, el dictamen de la agencia consti-tuye una alteración al castigo que impone una pena mayor de la que fijaba la ley al delito cuando fue cometido. La disposición constitucional ex post facto lo que prohíbe es la imposición de un castigo más severo que el dispuesto por ley o reglamento cuando el delito ocurrió. Es evidente que éstas no son las circunstancias del señor Gotay Flores.
Esta conclusión es cónsona con la propia Ley Núm. 49, supra. Precisamente, el Art. 4 del referido estatuto, 4 L.P.R.A. see. 1112 n., indica que “[l]as disposiciones de esta Ley ... aplicarán a todos los convictos cumpliendo sentencia bajo la custodia y supervisión de la Administración de Corrección”. (Enfasis suplido.) Ello implica que el Regla-mento Núm. 7595, aprobado en consecución de los propó-sitos esbozados por la Ley Núm. 49, supra, aplica a todos los convictos, según consignado en el citado estatuto.
Mediante el voto particular disidente, la minoría de esta Curia intenta desvirtuar la diáfana intención legislativa de establecer una prohibición absoluta al conceder pases familiares a confinados sentenciados por el delito de asesinato. El acceder a tal contención, atentaría contra la firme política pública, el estado de derecho y el reclamo de la sociedad puertorriqueña. En su fallido análisis, olvidan *710 que los referidos pases o permisos constituyen una medida de tratamiento y no un derecho. Más aún, la aplicación del Reglamento Núm. 7595 al caso particular del peticionario no incide sobre la prohibición constitucional de leyes ex post facto.
IV
Finalmente, nos sorprenden las expresiones vertidas en el voto particular disidente de la compañera Juez Asociada Señora Rodríguez Rodríguez sobre la supuesta emisión “a última hora” de ésta resolución. Al parecer, nuestra compa-ñera olvida —para su conveniencia— que el trámite proce-sal interno del caso de autos no fue alterado de forma alguna.(1) Más bien, el único evento que levantó suspicacia *711 sobre ese trámite provino de su parte cuando indicó —vía memorando— que pretendía certificar la resolución, decla-rando “no ha lugar” el recurso de autos, aún sin contar con la votación final de los Jueces de este Tribunal sobre un memorando previamente circulado por el Juez Asociado Se-ñor Rivera García. Nos parece contradictorio, incluso, errá-tico, el que la compañera Juez Asociada Señora Rodríguez Rodríguez indique que ésta Resolución se emitió “a última hora”, cuando lo cierto es que el caso de autos ha sido ob-jeto de discusión de este Tribunal desde el 17 de diciembre de 2010. Los incidentes procesales acontecidos ante nos ha-blan por sí mismos.
V
Por los fundamentos expuestos, se declara “no ha lugar” el recurso presentado por la parte peticionaria.
Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada Señora Rodríguez Rodrí-guez emitió un voto particular disidente, al cual se unieron el Juez Presidente Señor Hernández Denton y la Jueza Asociada Señora Fiol Matta.
Voto particular disidente emitido por la Juez Asociada Se-ñora Rodríguez Rodríguez, al que se une el Juez Presi-dente Señor Hernández Denton y la Jueza Asociada Se-ñora Fiol Matta.
Lamento que una mayoría de este Tribunal rehúse soli-citarle a la Procuradora General que se exprese sobre la controversia en este caso, a saber, qué reglamento regula la solicitud de beneficio de cierto programa de permisos para salir fuera de las instituciones correccionales, si aquel que estaba vigente al momento cuando el confinado solici- *712 tante incurrió en los hechos delictivos por los cuales se encuentra confinado, o el que está vigente al momento de la solicitud.
Ello me parece necesario, pues en dos ocasiones anterio-res la Procuradora General, a instancias del Tribunal de Apelaciones, había expresado la posición del Estado en el sentido de que el reglamento que corresponde utilizar en estos casos es el que estuviese vigente al momento de la comisión del delito y no cuando el confinado solicite el be-neficio del programa.(1) De esta forma, la Procuradora General, con correcto rigor jurídico, rechazó la actuación de la Administración de Corrección que ha determinado aplicar en estas circunstancias el reglamento que está vigente actualmente.(2) Evidentemente, ella sabe que la postura asumida por la Administración de Corrección es contraria a lo que manda la Constitución del Estado Libre Asociado de Puerto Rico cuando proscribe la aplicación de leyes ex post facto.
No logro comprender a qué obedece la renuencia de la mayoría a escuchar al principal abogado del Estado ante este Tribunal en un asunto sobre el cual ya se ha expre-sado a nivel del foro apelativo intermedio. Deberíamos aprovechar instancias como éstas para pautar una norma de derecho que, claramente, es objeto de litigación continua ante el Tribunal de Apelaciones y que, a todas luces, está siendo aplicada incorrectamente por la Administra-ción de Corrección en violación a los derechos constitucio-nales de los confinados.
En su lugar y a última hora, el Tribunal emite una ex- *713 tensa resolución cuyo efecto real, a mi juicio, es modificar la normativa vigente sobre los criterios para determinar cuándo la aplicación de una ley puede considerarse contra-ria al mandato constitucional contra leyes ex post facto.
Por otro lado, es evidente que este caso debe tramitarse como una apelación y no como el recurso discrecional de certiorari, habida cuenta de las sentencias contradictorias dictadas por varios paneles del Tribunal de Apelaciones. Regla 18(b) del Reglamento del Tribunal Supremo, 4 L.P.R.A. Ap. XXI-A. La mayoría del Tribunal rehúsa aten-der este caso como una apelación y se niega a explicar su proceder.
Porque no estoy de acuerdo con el errado proceder de la mayoría, disiento de su criterio.
I
Los hechos en este caso son sencillos y sobre ellos no hay controversia. El 8 de mayo de 1992, el Tribunal de Primera Instancia dictó sentencia contra el señor Gotay Flores por el delito de asesinato e infracciones a la Ley de Armas de Puerto Rico por hechos ocurridos en 1991. Ac-tualmente, se encuentra en una institución penal de custo-dia mínima cumpliendo una pena de ciento ocho años.
El 1 de diciembre de 2009, el señor Gotay Flores solicitó que se le refiriera al programa de pases de la Administra-ción de Corrección. El 4 de enero de 2010, la agencia res-pondió a la solicitud de la manera siguiente:
Informa la Sra. M. Pérez, Técnica Sociopenal, que según esta-blece el Reglamento para la concesión de permisos a los miem-bros de la población correccional para salir o residir fuera de las instituciones correccionales aprobado el 24 de octubre de 2008, estipula que los casos cumpliendo sentencias por ley de armas no cualificarán para este tipo de permiso. Indican que no cualificarán para pases familiares los confinados que se encuentren [sic] cumpliendo sentencia por delitos contempla-dos en la Ley Núm. 49 del 26 de mayo de 1995. Que tampoco cualificarán para pases familiares confinados sentenciados *714 por delitos de asesinato, ni de violación, incesto, sodomía y actos lascivos si la víctima fuera menor de 16 años indepen-dientemente de la fecha en que haya sido sentenciado [sic] conforme lo establece la Ley Núm. 49 antes citada.
El señor Gotay Flores solicitó reconsideración de esta determinación por considerar que atender su solicitud a base de lo que disponía el Reglamento para la concesión de permisos a los miembros de la población correccional para salir o residir fuera de las instituciones correccionales del Estado Libre Asociado de Puerto Rico, Reglamento Núm. 7595 de 24 de octubre de 2008 (Reglamento Núm. 7595), era contrario a la protección constitucional contra leyes ex post facto. Éste considera que su solicitud debe evaluarse según lo que dispone el Reglamento para la concesión de permisos a los confinados para salir fuera de las institucio-nes penales, Reglamento Núm. 2678 de 24 de julio de 1980 (Reglamento Núm. 2678), que estaba vigente al momento de los hechos que dieron base a su convicción y sentencia. Posteriormente, el señor Gotay Flores presentó un opor-tuno recurso de revisión administrativa ante el Tribunal de Apelaciones. En su recurso planteó, esencialmente, lo mismo que había planteado ante el ente administrativo.
El 29 de abril de 2010, el Tribunal de Apelaciones (Ar-bona Lago, Colom García y Vizcarrondo Irizarry, Js.) emi-tió una sentencia en la que confirmó la determinación de la agencia de excluir al peticionario del programa de pases según la reglamentación vigente desde 2008. El foro inter-medio limitó su discusión a plantear que “[l]a concesión de esos permisos son actos discrecionales de la Administra-ción que corresponden a una serie de consideraciones que lleva a cabo la agencia para aquellos confinados que pue-den ser elegibles a tal medida de tratamiento”. A renglón seguido, ese foro abordó el tema de la deferencia con la que se atienden las determinaciones administrativas y proce-dió a abstenerse de revisar la determinación recurrida.
Respecto al planteamiento medular del señor Gotay, el foro apelativo indicó que la agencia estaba obligada a apli- *715 carie el Reglamento Núm. 7595 por disposición expresa de la Ley Núm. 49 de 26 de mayo de 1995 (4 L.RR.A. sees. 1112, 1136a, 1136b y 1201). Esta ley enmendó la ley habi-litadora de la Administración de Corrección para excluir expresamente del beneficio de poder participar en los pro-gramas de desvío y rehabilitación a aquellos confinados convictos de asesinato o violación a la Ley de Armas de Puerto Rico, entre otros delitos. 4 L.P.R.A. sec. 1136a. La sentencia indica, citando el Reglamento Núm. 7595, que las exclusiones de la Ley Núm. 49 aplican “independiente-mente de la fecha en que [los convictos] hayan sido senten-ciados conforme lo establece la Ley Núm. 49 antes citada”. Con lo cual, concluye que la acción de la agencia se justi-fica, pues es lo que ordena la ley.
Inconforme nuevamente, el señor Gotay Flores presentó un escrito de apelación ante este Tribunal donde planteó que el Tribunal de Apelaciones había errado “al no resolver que la aplicación del Reglamento Núm. 7595 al recurrente viola la protección constitucional contra leyes ex post facto”. Una mayoría de los miembros de este Tribunal, inexplicablemente, rehúsa atender esta controversia. No puedo validar este proceder, erróneo e incomprensible, de este Tribunal.
II
Como se apuntó, el apelante nos solicita que se revoque una sentencia que sostuvo que éste no podía beneficiarse de cierto programa de permisos para salir fuera de las ins-tituciones correccionales para trabajar, estudiar, visitar su hogar o el de familiares con la posibilidad de permanecer allí por un corto periodo de tiempo, para participar en ac-tividades culturales, recreativas, religiosas, o para recibir tratamiento médico, incluyendo hospitalización, porque a su juicio, el Reglamento Núm. 7595, vigente en la actuali-dad, expresamente excluía a los confinados que, como él, *716 habían sido convictos de delitos de asesinato y de violación a la Ley de Armas de Puerto Rico. La posición del peticio-nario es que su solicitud debe evaluarse mediante el regla-mento que estaba vigente a la fecha de los hechos delicti-vos, el cual no contemplaba tal exclusión. Véase el Reglamento Núm. 2678. La actuación del Estado, se alega, viola la protección constitucional contra leyes ex post facto. Tiene razón el apelante. Veamos brevemente.
La Sec. 12 del Art. II de la Constitución del Estado Libre Asociado de Puerto Rico, L.P.R.A. Tomo 1, prohíbe la apli-cación de leyes ex post facto. En González v. E.L.A., 167 D.P.R. 400 (2006), abundamos sobre esta disposición cons-titucional e indicamos que son cuatro los tipos de estatutos que consideramos ex post facto: (1) aquellas leyes que cri-minalizan y castigan un acto que al ser realizado no era delito; (2) las que agravan un delito o lo hacen mayor de lo que era al momento de ser cometido; (3) las que alteran el castigo, imponiendo una pena mayor que la fijada para el delito al momento de ser cometido, y (4) las que alteran las reglas de evidencia exigiendo menos prueba que la reque-rida por la ley al momento de la comisión del delito para castigar al acusado o reducir el quantum de evidencia ne-cesario para encontrarlo culpable. Véanse, además: Pueblo en interés menor F.R.F., 133 D.P.R. 172 (1993); Fernández v. Rivera, Jefe de Presidio, 70 D.P.R. 900 (1949). Esta dis-posición, por lo tanto, lo que hace es prohibir que se apli-que retroactivamente una ley que agrava para el acusado su relación con el delito, la oportunidad de defenderse y la forma de cumplir una sentencia o su extensión.
Esta cláusula constitucional no tan sólo se utiliza para impedir la aplicación retroactiva de cierta legislación, sino también cuando se trata de actos “de naturaleza legislativa”. Por lo que la prohibición puede invocarse cuando se impugna la aplicación o derogación retrospec-tiva de reglamentos administrativos y ordenanzas munici-pales que acarrean consecuencias penales. En Ross v. Ore *717 gon, 227 U.S. 150, 162-163 (1913), el Tribunal Supremo de Estados Unidos indicó lo siguiente:
... But whilst thus uniformly holding that the provision is directed against legislative, but not judicial, acts, this court with like uniformity has regarded it as reaching every form in which the legislative power or a state is exerted, whether it be a constitution, a constitutional amendment, an enactment of the legislature, a by law or ordinance of a municipal corporation, or a regulation or order of some other instrumentality of the State exercising delegated legislative authority. (Enfasis nuestro.)
Y no cabe duda de que así tiene que ser. Mediante la aprobación de una ordenanza o un reglamento, las agen-cias administrativas o los municipios, según fuere el caso, ejercen poderes que le han sido delegados, válidamente, por la Asamblea Legislativa. Se trata, pues, de actos de naturaleza legislativa.
Hemos expresado que lo determinante para que un es-tatuto contravenga la cláusula contra leyes ex post facto es que “el mismo sea de aplicación retroactiva y, además, que sea más oneroso para el imputado que el vigente a la fecha en que se cometió la ofensa”. (Enfasis suplido.) González v. E.L.A., supra, pág. 409. Véase Corretger v. Adm. Corrección, 172 D.P.R. 320 (2007). Para determinar si la nueva ley es más onerosa que la vigente al momento de la comi-sión del delito, lo medular es, según expresa el Tribunal Supremo de Estados Unidos en el caso normativo Weaver v. Graham, 450 U.S. 24, 32 esc. 17 (1981), “whether the new provision imposes greater punishment after the commission of the offense not merely whether it increases a criminal sentence”. (Enfasis nuestro.) Véase Lindsey v. Washington, 301 U.S. 397, 401 (1937). Y ello ocurre, según el Tribunal, cuando el estatuto que se aplica “lengthen [ed] the period that someone in petioner’s position must spend in prison”. Weaver v. Graham, supra, pág. 33. Véase Lynce v. Mathis, 519 U.S. 433, 442 (1997). Si la ley impugnada altera las condiciones de confinamiento para hacerlas más onerosas, *718 estamos frente a un problema de aplicación de leyes ex post facto. Weaver v. Graham, supra.
Lo anterior deja claro que lo que hay que evaluar al considerar un planteamiento de aplicación ex post facto de una ley o regulación es si las condiciones impuestas al con-finado por éstas, hacen más oneroso su convicción o confi-namiento y no, necesariamente, que la ley o regulación im-pugnada aumente el término que debe cumplir en prisión el confinado, es decir, la pena impuesta. Y es que es evi-dente que si la ley que se aplica retroactivamente aumenta la pena por la que resultó convicta una persona, estamos ante una clara violación a la cláusula contra leyes ex post facto, pero la protección constitucional aspira a más.
Así, una ley puede no aumentar la pena que se ha de cumplir por un delito, pero al hacer más opresivo o gravoso el castigo impuesto, ésta no puede aplicarse retroactiva-mente por mandato de la disposición constitucional contra leyes ex post facto. Por ejemplo, en Medley, Petitioner, 134 U.S. 160 (1890), el Tribunal Supremo de Estados Unidos dispuso que una ley que exigía que un confinado que había sido convicto de un delito que requería se impusiera la pena de muerte, tuviese que permanecer en confinamiento solitario hasta su ejecución no se podía aplicar al convicto en ese caso, ya que al momento de los hechos delictivos, la legislación aplicable no exigía que se le mantuviese en con-finamiento solitario. El Tribunal concluyó que ello violaría la disposición federal contra leyes ex post facto. Véanse, además: Cummings v. Missouri, 71 U.S. (4 Wall.) 277 (1867); Weaver v. Graham, supra.
El Tribunal, en la resolución que certifica, parece con-cluir todo lo contrario cuando concluye que “al determinar si una ley penal es más onerosa que la vigente al momento en que se cometieron los actos delictivos es necesario exa-minar si, en comparación con el estatuto antiguo, la nueva ley tiene el efecto de alargar o prolongar la pena impuesta *719 que el autor de delito deberá cumplir”. (Énfasis nuestro.) Resolución, pág. 708. O cuando indica que “en esta ocasión los actos de la AC no van en detrimento de esa protección. Ello, pues no incrementa la pena que se le impuso al peti-cionario por la comisión del delito de asesinato y violación a la Ley de Armas de Puerto Rico.” (Énfasis nuestro.) íd., pág. 709. Como también cuando asevera lo siguiente: “[d]e ninguna manera, el dictamen de la agencia constituye una alteración al castigo que impone una pena mayor de la que fijaba la ley al delito cuando fue cometido”, por lo que en este caso no se infringe la disposición contra leyes ex post facto. (Énfasis nuestro.) íd. Esta lectura reiterada de la cláusula constitucional que se interpreta hoy choca frontal-mente con nuestra jurisprudencia como con la normativa expuesta por el Tribunal Supremo de Estados Unidos y tiene el efecto de, mediante una resolución, modificar pro-fundamente —sino revocar— el estado de derecho hasta hoy vigente y colocarnos al margen de la Constitución de Puerto Rico y de Estados Unidos.
En González v. E.L.A., supra, pág. 409, expresamos, es-pecíficamente, que es “incompatible con la protección contra leyes ex post facto aplicar retroactivamente una ley que elimina a cierto grupo de convictos la posibilidad de ser elegibles para la concesión de libertad bajo palabra o bajo supervisión electrónica”, pues la eliminación retroactiva de esos beneficios “tiene el potencial de alargar el término que el convicto habrá de cumplir en reclusión”. Por otro lado, en Lynce v. Mathis, supra, pág. 75, el Tribunal Supremo de Estados Unidos se enfrentó a una legislación del estado de Florida que prohibía que confinados convictos del delito de tentativa de asesinato, entre otros delitos, cualificaran para un programa de libertad temprana {early release). El Tribunal concluyó que la ley era inconstitucional porque “it made ineligible for early release a class of prisoners who were previously eligible”.
Destacamos, tal como señala el profesor Chiesa, que poco importa si con la ley o el reglamento aplicado “el acu- *720 sado pierde un derecho o una gracia legislativa; lo decisivo es que queda en peor posición que la que tenía en el mo-mento de la comisión del delito”. E. Chiesa, Derecho proce-sal penal de Puerto Rico y Estados Unidos, Bogotá, Ed. Forum, 1992, Vol. II, Sec. 19.1, pág. 548. En igual sentido, D. Nevares-Muñiz, Derecho Penal Puertorriqueño, 6ta ed., San Juan, Inst. para el Desarrollo del Derecho, 2010, págs. 97-99; J. Dressier, Understanding Criminal Law, 4ta ed., Nueva Jersey, Ed. Lexis-Nexis, 2005. En Weaver v. Graham, 450 U.S. 24, 30-31 (1981), el Tribunal Supremo de Estados Unidos indicó sobre este particular lo siguiente:
... Critical to relief under the Ex Post Facto Clause is not an individual’s right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated. Thus, even if a statute merely alters penal provisions accorded by the grace of the legislature, it violates the Clause if it is both retrospective and more onerous that the law in effect on the date of the offense. (Enfasis nuestro.)
Además, en este caso el Tribunal Supremo federal abundó sobre este asunto indicando expresamente: “The presence or absence of an affirmative, enforceable right is not relevant, however, to the ex post facto prohibition .... Thus, even if a statute merely alters penal provisions accorded by the grace of the legislature, it violates the Clause if it is both retrospective and more onerous than the law in effect on the date of the offense.” (Enfasis .nuestro.) Weaver v. Graham, supra, págs. 30-31.
Al aplicar objetivamente la normativa expuesta somera-mente, la única conclusión posible es que el apelante tiene razón en su reclamo y que la mayoría del Tribunal se equi-voca al rechazar su planteamiento.
La Administración de Corrección evaluó la solicitud de pase hecha por el señor Gotay según un reglamento que no estaba vigente al momento en que éste cometió los hechos por los cuales fue convicto y sirve su sentencia. De acuerdo *721 con ese reglamento, personas condenadas por los delitos, como por el que fue convicto el señor Gotay, no gozaban del privilegio de poder participar en el programa de pases para salir fuera de la institución penal. En 1991, cuando el ape-lante incurrió en la conducta delictiva por la que cumple condena, el reglamento que estaba vigente para similar programa, no excluía de sus beneficios a los convictos de asesinato y violación a la Ley de Armas de Puerto Rico como él. Con lo cual, éste podía ser considerado para este programa que le permitía salir de la institución para tra-bajar recibiendo remuneración por ello, estudiar, visitar fa-miliares y permanecer con éstos por periodos cortos de tiempo, recibir tratamiento médico y hospitalización fuera de la prisión o participar en actividades culturales, religio-sas, educativas, entre otras.
Parece claro que al aplicarle el reglamento vigente en la actualidad, el apelante, señor Gotay, “queda en peor posi-ción que la que tenía en el momento de la comisión del delito”. Véase González v. E.L.A., supra. Ciertamente, se alarga el tiempo que está en prisión, pues no puede salir de la institución incluyendo la posibilidad de residir por corto tiempo fuera de la prisión; como tampoco puede cualificar para disfrutar del programa de estudios o trabajo fuera de la institución penal. Según el Reglamento Núm. 7495 se alteraron las condiciones de confinamiento del señor Go-tay, tornando en más onerosa la pena que cumple que se-gún el Reglamento Núm. 2678, que era el que estaba vi-gente al momento de los hechos delictivos. Sin más, ello ofende la Constitución de Puerto Rico y la de Estados Uni-dos, pues ambas prohíben la aplicación de leyes ex post facto.
El propio Estado en dos ocasiones anteriores se ha alla-nado a peticiones como la del señor Gotay. Así, en Samuel Rivera Alejando v. Administración de Corrección, Caso Núm. KLRA-2009-433 (Carlos López Feliciano, Sixto Her-nández Serrano, Luis A. Rosario Villanueva, Js.), la Procu- *722 radora General, a petición del Tribunal de Apelaciones, compareció a expresar su criterio sobre esta controversia y, con un encomiable sentido de responsabilidad con el cargo que ostenta, expresó al tribunal lo siguiente:
Conforme a lo anterior la administración de Corrección aprobó el [Reglamento Núm. 4851 de 1992]. Dicho reglamento esta-blecía los criterios para determinar la elegibilidad de los con-finados para participar en el programa de permisos para salir fuera de las instituciones penales y estaba vigente al momento del recurrente ser sentenciado. Sin embargo, al evaluar la so-licitud del confinado, la Administración utilizó el [Reglamento Núm. 7595 de 2008]. De conformidad, la agencia concluyó que bajo los parámetros del [Reglamento Núm. 7595] el recurrente no cualificaba para el Programa de Pases. No obstante, reco-nocemos que el Artículo II, sección 12 de nuestra Constitución prohíbe la aplicación de leyes ex post facto. 1 L.P.R.A., Art. II, sec. 12. Dicha prohibición impide la aplicación de: 1. leyes que criminalizan y castigan un acto que al ser realizado no era delito; 2. leyes que agravan un delito o lo hacen mayor de lo que era al momento de ser cometido; 3. leyes que alteran el castigo imponiendo una pena mayor que la fijada para el de-lito al ser de ser cometido; y 4. leyes que alteran las reglas de evidencia exigiendo menos prueba que la requerida por ley al memento de la comisión del delito para castigar al acusado o reduciendo el quántum de evidencia necesario para encon-trarlo culpable. Siendo ello así, no nos oponemos a la solicitud del recurrente de que sea evaluado para el Programa de Pases sin Custodia utilizando el Reglamento Número 4851, vigente al momento de los hechos delictivos y de emitida la sentencia en su contra. (Enfasis suplido y en el original, y citas omitidas.)
Al igual que la Procuradora General, considero que la solicitud del señor Gotay debe ser evaluada por el regla-mento que estaba vigente al momento de los hechos que dieron base a su convicción, por lo que considero que la actuación en contrario de la Administración de Corrección, que ahora avala una mayoría del Tribunal, viola los dere-chos constitucionales según nuestra Carta Fundamental como los derechos al amparo de la Constitución de Estados Unidos.
*723 Por lo anterior, disiento.(3)

 El caso de autos fue discutido en la reunión ordinaria del Pleno de este Tribunal, celebrada el 17 de diciembre de 2010. Días más tarde, el 11 de enero de 2011, la compañera Juez Asociada Señora Rodríguez Rodríguez circuló un memo-rando en el cual incluyó un voto particular disidente, el cual constituiría su posición en el asunto de proveerse “no ha lugar” el recurso de autos. Ese mismo día la com-pañera Jueza Asociada Señora Fiol Matta circuló un memorando en el cual indicó que se unía a ese voto particular y, al día siguiente, el Juez Presidente Señor Her-nández Denton expresó mediante memorando la misma intención.
El 12 de enero de 2011, el Juez Asociado Señor Rivera García solicitó a la Juez Asociada Señora Rodríguez Rodríguez el expediente del caso de autos para su estu-dio correspondiente y le solicitó, además, un término razonable para ello. Ese mismo día el expediente le fue remitido.
Así las cosas, en horas de la tarde del 20 de enero de 2011, el Juez Asociado Señor Rivera García circuló un memorando en el cual expuso su posición sobre el caso de autos y su debida recomendación. Minutos después, la Juez Asociada Señora Rodríguez Rodríguez circuló otro memorando indicando que el 21 de enero de 2011 se proponía certificar la resolución proveyendo “no ha lugar” al recurso del caso de autos conjuntamente con su voto particular. Ello, aun cuando ninguno de los Jueces de este Tribunal había expresado su posición o emitido su voto en cuanto al memo-rando circulado minutos antes por el Juez Asociado Señor Rivera García.
A raíz de lo anterior, el Juez Asociado Señor Rivera García circuló —ese mismo día— otro memorando en el cual indicó que todavía no era apropiado certificar reso-lución alguna sobre el presente caso debido a que se desconocía la votación final del Tribunal. Por ello, recomendó posponer la disposición del caso de autos hasta que se conociera dicha votación final. A este último memorando se unieron los Jueces Aso-ciados Señores Martínez Torres y Kolthoff Caraballo, y la Jueza Asociada Señora Pabón Charneco. Al día siguiente, 21 de enero de 2011, el expediente le fue remitido al Juez Asociado Señor Rivera García.
El 24 de enero de 2011, el Juez Asociado Señor Rivera García circuló un memo-rando en el cual indicó la votación final del asunto de autos para que dispusiera del caso conforme a ello.

 Véase Samuel Rivera Alejando v. Administración de Corrección, Caso Núm. KLRA-2009-433 (Carlos López Feliciano, Sixto Hernández Serrano, Luis A. Rosario Villanueva, Js.); José Medina Rosa v. Administración de Corrección, Caso Núm. KL-RA-2010-250 (Carlos López Feliciano, Sixto Hernández Serrano, Olga Birriel Car-dona, Js.).

 La Procurador General hace la salvedad, correctamente, de que ello no su-pone que se le deba conceder al confinado el pase que solicita, sino meramente que su solicitud de debe evaluar de acuerdo con los criterios que se establecen en el regla-mento que estaba vigente a la fecha de los hechos que dieron base a su convicción.

 Solamente para aclarar el escolio 1 de la resolución emitida por la mayoría del Tribunal, es preciso indicar que en la reunión ordinaria del Pleno celebrada el 17 de diciembre de 2010, una mayoría de los integrantes de este Foro proveyó “no ha lugar” al recurso presentado en el caso de autos. El Juez Presidente Señor Hernán-dez Denton, la Jueza Asociada Señora Fiol Matta y la Juez Asociada Señora Rodrí-guez Rodríguez disintieron de ese curso de acción. Inmediatamente, en la misma reunión del Pleno, la suscribiente anunció que habría de emitir un voto particular disidente de la denegatoria del recurso. Sólo restaba circular el referido voto particular y certificar la resolución de “no ha lugar” previamente aprobada por la mayoría del Tribunal.